JUANITA DYER, Plaintiff

v.

WORLDWIDE PROTEIN, INC., A TEXAS CORPORATION,
Defendant

Civil No. 28/1984

Territorial Court of the Virgin Islands
Div. of St. Croix at Kingshill

March 1, 1985

G. Luz A. James, Esq., Christiansted, St. Croix, V.I., *for plaintiff*

Ellon Krugman–Kadi, Esq., Christiansted, St. Croix, V.I., *for plaintiff*

Kenneth A. Rosskopf, Esq., Christiansted, St. Croix, V.I., *for defendant*

Eric Fischer, Esq., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

After a four-day bench trial this Court must determine whether a permanent injunction should issue to restrain defendant, Worldwide Protein, Inc. (hereinafter "Worldwide") from removing certain items of personalty introduced to the premises of plaintiff, Juanita Dyer (hereinafter "Dyer") under the terms of a lease entered into by the parties and in furtherance of Worldwide's business. For the reasons set forth below, the injunctive relief requested will be granted in part and denied in part.

## FINDINGS OF FACT

This Court, having heard testimony from various witnesses, having viewed numerous exhibits and having visited the premises in question, makes the following findings of fact.

1. On January 13, 1981, Worldwide entered into an agreement with Dyer to lease certain premises known as Plot No. 2 Rust-op-Twist and a portion of Plot No. 156 Estate La Valle, Christiansted, St. Croix, United States Virgin Islands.

2. Said lease provided for a two-year term commencing February 1, 1981, and granted to defendant the option to extend the term of the lease for two additional years.

3. During the term of the lease, Worldwide used the premises to operate a shrimp hatchery and to develop a feed diet for redfish.

4. Worldwide exercised its option to renew in October, 1982, and extended the term of the lease to January, 1985.

5. The parties thereafter entered into extensive negotiations for a further renewal of the lease but failed to come to an agreement.

6. On or about August 15, 1984, defendant notified plaintiff that it had ceased its operations and would not be renewing its lease.

7. Sometime thereafter, Worldwide began to remove various items of personalty from the premises.

8. On September 18, 1984, this Court entered a Temporary Restraining Order to prohibit defendant from removing from the premises any personal property which had been introduced to the premises as an alteration, addition, improvement or installation.

9. Prior to the entry of the Temporary Restraining Order, defendant had dismantled certain equipment, as well as some of the electrical and water supply lines or conduits.

## ISSUE

This Court is now called upon to determine whether paragraph 7(d) of the lease, which provides that:

> All alterations, additions, improvements and installations made by lessee or its predecessors on the premises, including installations in the beach area shall, at the option of lessor upon termination of this lease, (1) either remain on the premises as lessor's property or (2) be removed from the premises and the premises restored to their original condition, at lessee's expense . . .

purports to grant to plaintiff the option to retain all items of personalty brought to the premises by defendant during the term of its lease.

## DISCUSSION

In the instant case, plaintiff has chosen to exercise her option as provided in the lease, by demanding all items which were placed on the premises by defendant. In support of her position, Dyer argues that paragraph 7(d) was intended to encompass all equipment brought on to the property to further the mariculture business of Worldwide Protein. (Plaintiff's Post-Trial Brief, p. 11). Defendant, however, contends that it should retain the disputed items either because they were never intended to be made permanent accessions to the premises or alternatively, because they constituted trade fixtures. (Defendant's Post-Trial Brief, pgs. 5, 17). This Court is not swayed or convinced by either party's arguments.

Whatever the rights of the parties concerned with the transaction might be in the absence of provisions in the lease, it is unquestionable that expressed intentions and understandings will govern. Unit-

277

ed States v. Delaware, Lackawanna & Western Railroad Co., 264 F.2d 112 (3d Cir.), cert. denied, 361 U.S. 819, 80 S.Ct. 63, 4 L.Ed.2d 65 (1959). As expressed in paragraph 7(d), it was the intention of the parties that plaintiff have the option, upon termination of the lease, to retain any alteration, addition, improvement, or installation made by defendant on the premises. Hence, contrary to plaintiff's assertion, lessor does not have an absolute right to keep *all* items which were placed on the premises by defendant. Rather, she has only the limited right to retain alterations, improvements, additions and installations.

■ Furthermore, the doctrine of trade fixtures is irrelevant to a determination of the respective rights of the parties in this suit. As a general rule, rights between a landlord and tenant with respect to fixtures may be modified, restricted or extended by agreement. Nicholson v. Altona Corporation., 320 F.2d 8 (3d Cir. 1963). If it had been the intention that trade fixtures should be an exception, with the right of the lessee to remove them at the termination of the lease, the parties would have so stipulated in the contract. Union Building Co. of Pennsylvania v. Pennell, 78 F.2d 959, 966 (3d Cir. 1935). Similarly, if it had been the intention of plaintiff and defendant that such fixtures should become the property of Worldwide, they would or should have so stipulated in the lease, but they did not.

■ When parties to an agreement reduce their understanding to a writing that uses clear and unambiguous terms, a court should look no further than the writing itself when asked to give effect to that understanding. Brokers Title Co., Inc. v. St. Paul Fire and Marine Insurance Co., 610 F.2d 1174, 1178 (3d Cir. 1979). Paragraph 7(d) is unambiguous as to the rights of each party in this case. Hence, the narrow issue before this Court is whether any of the disputed items constitute additions, alterations, improvements, or installations within the meaning of paragraph 7(d).

■■ In determining the manifest intention of the parties, the common or normal meaning will be given to the words of a contract unless the circumstances show that a special meaning should be attached. O'Brien & Gere Engineers, Inc. v. Taleghani, 525 F. Supp. 750, 760 (E.D. Pa.), aff'd, 707 F.2d 1395 (3d Cir. 1981). When given their usual, ordinary, and popular meaning and viewed in the context which is used in the lease, "alterations" means something changed about the premises, "addition" something added thereto and "improvement" something bettered therein. Bolin v. Laderberg, 207 VA 795, 153 SE2d 251 (1967). The words are of broad significa-

278

tion. Id.; Pennell, supra. "Installation" means something fixed in position for use. Websters New World Dictionary (2d coll. ed. 1976); Blacks Law Dictionary (4th ed. 1968) and Long v. Ulmer Machinery Co., cited therein.

Although approximately one hundred items initially were alleged to have been in dispute, the parties, without identifying any specific items, reported to this Court during the course of the trial that certain items were no longer in dispute. Since evidence was adduced regarding approximately sixty-three (63) items, this Court will limit its findings to these particular items. Accordingly, the Court concludes that the electrical, air and water conduits which were partially dismantled by defendants constitute installations and/or additions and shall remain on the premises. Furthermore, all items which were placed on the property prior to the commencement of Worldwide's lease shall be retained by plaintiff. Moreover, all items which fall within the definition of alterations, additions, improvements or installations as stated herein, including, but not limited to the items set forth in Appendix "A", annexed hereto and incorporated herein by reference, shall remain on the premises. Contrariwise, all items which do not fall within one of the four categories, including, but not limited to the items set forth in Appendix "B" annexed hereto and incorporated herein by reference, shall be retained by defendant.[1]

■■ A permanent injunction, prohibitory in part and mandatory in part, shall issue to require defendant to restore all partially dismantled air and water conduits, as well as electrical conduits and the electrical systems which they serviced, to the condition in which they existed prior to the partial dismantling. The injunction shall also prohibit defendant from removing any of the items set forth in Appendix "A". Finally, plaintiff will be awarded reasonable attorney's fees as the prevailing party in this suit, upon submission of an appropriate affidavit in accordance with the requirements of Lindy Builders.

## CONCLUSIONS

For the foregoing reasons, plaintiff's motion for a permanent injunction to restrain defendant from removing certain items which

---

[1] If the Court has overlooked any items which remain in dispute, on motion of either party, a hearing will be held to determine whether such items constitute additions, alterations, improvements, or installations.

279

constitute additions, alterations, improvements or installations is granted in part and denied in part.[2]

## APPENDIX "A"

a. The conde Dri-Air pump (connected to air manifold by piece of flexible tubing).

b. Onan generator (wired to existing transfer switch).

c. Stewart Stevensen generator and Lexco transfer switch (generator is bolted to floor with six bolts and connected to exterior diesel fuel tank; exhaust pipe passes through wall (bolted to ceiling)).

d. Assorted feedmill electrical panels and outlet boxes, main breaker box magnatron and Deadman switches (bolted or screwed to walls).

e. Meadows—Hammer mill (bolted to wooden blocks which are bolted to floor).

f. Thomas vertical steam sterilizer.

g. Chemtrix—ph meter/controller (Ph probe connected to well algal feed-line pipe; additional lead to $CO_2$ shed connection).

h. Assorted pvc valves, fittings, standpipes, etc. (screwed to larval rearing tanks).

i. $CO_2$ manifold and regulator (screwed to wall in $CO_2$ cylinder shed, fittings to $CO_2$ cylinder);

j. Air pump (connected to air distribution system by piece of flexible hose; located in Bay below reactor area)

k. Hayward pool pumps (2).

l. Hoses (in beach area).

m. Post larval shrimp harvest boxes (4) (connected with Pvc hoses to larval rearing tanks upper level).

n. Fluorescent Light fixtures (20).

o. Hypalon and redwood tanks (8) (attached to hypolon drain, runs through sand box and out frame).

p. FICEM tank (bracketed and caulked to poured concrete slab, metal brackets drilled and screwed to slab to position sides of tank).

q. Hypalon and plywood tank (connected to drain).

r. Green fiberglass tank (with fittings, slab and valves).

---

[2] Since no evidence was adduced in this trial regarding rental payments, this Court declines to enter a judgment at this time, awarding the funds which are currently held in escrow by Banco Popular in St. Croix. Nor will the Court order defendant to pay rent which has accrued since February 1, 1985, but will leave disposition of these matters for another day.

s. Constant volume pump (bolted to concrete slab and connected to intake and discharge pvc plumbing system).

u. Blue fiberglass tank (connected with bulkhead fittings to pipe from pumphouse (through wall)).

v. Air blower and associated pressure gauges and relief valves (connected to air distribution manifold).

w. Air pump (1) (connected to flexible hose to air distribution manifold; located in beach pumphouse).

x. Fybroc water pump (bolted to poured concrete slab; connected at pump intake and discharge).

y. Sump pump (located in pumphouse).

z. Alarm System.

aa. Feedmill breaker box (conduit wire installation secured to wall on plywood sheet which is bolted to wall).

bb. Spotlight system (switch box mounted to wall transformer or shaft spotlight).

cc. Lexco Transfer switch (bolted to wall).

## APPENDIX "B"

a. Gast vacuum pumps (4).

b. GE 220 V window air conditioner.

c. Amana 220 V window air conditioner.

d. Vortron—Cabinet dryer.

e. Picolo—Vacu fresh.

f. Buflovak—Double drum dryer.

g. Micropohl—Micropulverizer.

h. Hobart Shred/cutter.

i. Sanimixer.

j. Hobart—scale.

k. California pellet mill.

l. Hobart—meat grinder/extruder.

m. Twin shell blender.

n. Hobart—commercial mixer.

o. Tyler sieve shaker.

p. Admiral 8.2 cubic feet chest freezer.

q. Ward 5 cubic feet chest freezer.

r. Admiral 12 cubic feet refrigerator.

s. Washing machine.

t. Air conditioner (located in main house west wing).

u. Submersible pump.

v. Oxygen cylinders—4 large, 2 small.

w. Maturation tank liners (4).

x. Spawning tank stands (3).
y. Spawning tanks (12).
z. Hoses.
aa. White fiberglass inoculum tanks (4).
bb. Fish transport tank.
cc. Standby air pumps (2).
dd. Carbon dioxide and oxygen regulator.
ee. Time clock.
ff. Radial Arm saw.
gg. Plywood.
hh. Labconco Transfer Hood—Ultra Violet.
ii. Siemens Blower.
jj. Light Bank.

## JUDGMENT

For the reasons set forth in the Memorandum Opinion filed on even date herewith, it is

ORDERED, ADJUDGED and DECREED that defendant, its officers, agents, servants, employees and anyone acting on its behalf, be restrained and enjoined from removing any of the items which constitute alterations, additions, improvements or installations as set forth in Appendix "A" annexed hereto and incorporated herein; and it is further

ORDERED, ADJUDGED and DECREED that defendant restore all partially dismantled air and water conduits, as well as the electrical conduits and the electrical systems which they serviced, to the condition in which they existed prior to the partial dismantling; and it is further

ORDERED, ADJUDGED and DECREED that plaintiff be awarded reasonable attorney's fees pursuant to 5 V.I.C. Section 541 upon submission of an appropriate affidavit in accordance with Lindy Builders.