Thomas J. **HADLEY** and Gas House, Inc., Plaintiffs,

v.

Scott **GERRIE**, d/b/a Alexander's, Defendant.

**GAS HOUSE, INC.**, Plaintiff,

v.

**UNICORP AMERICAN CORPORATION,** formerly Institutional Investors Trust, Defendant.

Thomas J. **HADLEY** and Gas House, Inc., Plaintiffs,

v.

William and Hope **GERRIE,** Defendants.

Civ. Nos. 1988/15, 1988/16.
Bankruptcy No. 387–00017.
Adv. No. 388–001.

District Court, Virgin Islands, St. Croix.

Jan. 25, 1991.

Joel H. Holt, St. Croix, U.S.V.I., Joe Stamper, Stamper, Otis & Burrage, Antlers, Okl., for plaintiffs Thomas Hadley and Gas House, Inc.

Greg Hodges, Dudley, Topper & Feuerzieg, Charlotte Amalie, St. Thomas, U.S. V.I., Philip R. Hoffman, Pryor, Cashman, Sherman & Flynn, New York City, for defendant Unicorp.

BROTMAN, Acting Chief Judge:

Before the court is defendant Unicorp's motion and plaintiff Gas House, Inc.'s cross-motion for summary judgment. Both parties have also moved for Rule 11 sanctions. The case raises the issue whether a tenant can enforce a landlord's oral promise after the landlord has assigned all rights and duties in the lease to a third party. For the following reasons, defendant's motion is granted and plaintiff's cross-motion is denied.

FACTS AND PROCEDURE

The dispute arises out of the eviction of plaintiff Gas House, Inc. (herein Gas House), a night club in Christiansted, St. Croix, from its premises at Hamilton House, sometime in 1986. Originally, Gas House had purchased the lease in 1978 from the Alexander Hamilton Limited Partnership based on an oral agreement to extend the term to twenty years in exchange for extensive renovations. After the renovations were complete but before the modifications to the lease were put in writing, the Alexander Hamilton Limited Partnership went into default on its mortgage note, which was held by Institutional Investors Trust (IIT). Subsequently, IIT foreclosed its mortgage, became landlord and would not recognize the modifications to

the Gas House lease. After Gas House threatened to file a lien for its improvements, IIT and Gas House proceeded to negotiate a new lease.

On January 9, 1980,[1] Gas House and IIT signed a ten-year lease with a five-year option. After extensive discussions, the parties added paragraph 30, which gave any landlord other than IIT the right to terminate the lease, subject to the payment of a termination fee to Gas House. Paragraph 30 reads:

RIGHT OF TERMINATION BY LAND-LORD:

Notwithstanding anything in this lease to the contrary, upon 12 months prior written notice, Landlord may terminate this lease effective in the sixth, seventh, eighth or ninth Lease Years, if Landlord at the effective termination date shall be an entity or individual other than Institutional Investors Trust, subject to payment to Tenant of a termination fee as follows:

If termination is effective in the sixth Lease Year, $100,000.00.

If termination is effective in the seventh Lease Year, $85,000.00.

If termination is effective in the eighth Lease Year, $70,000.00.

If termination is effective in the ninth Lease Year, $55,000.00.

Upon payment of the termination fee Landlord shall be entitled to all furnishings [and] fixtures, incident to operating the leased premises in accordance with the use permitted herein.

The parties agree that, as stated by Thomas Hadley, president of Gas House, in a letter to the Gerries, the purpose of this provision was "to give IIT (the caretaker landlord) the opportunity to sell the property without the immediately subsequent landlord being tied to any particular lease." Defendant's Motion for Summary Judgment, Exhibit B at 1. In exchange, Gas House was entitled to receive compensation for its improvements to the premises,

which improvements, by the clear language of paragraph 30, were to remain with the property.

Gas House contends, however, that Unicorp also made an oral promise to find a landlord who could easily pay the termination fee, a promise Gas House sought in order to protect itself from an unhappy recurrence of the situation with the Alexander Hamilton Limited Partnership. Gas House claims that that oral promise induced it to sign the lease and that Unicorp is under an implied duty of good faith to guarantee a financially solvent landlord.

Defendant Unicorp [2] does not dispute that the termination fee was intended to compensate Gas House for the improvements it made to the premises. Unicorp vigorously denies, however, Gas House's contention that Unicorp was under any duty to find a landlord who could pay the termination fee, relying principally on its refusal during the lease negotiations to put any such promise in writing.

On June 20, 1985, Unicorp sold Hamilton House to defendants Gerries for $1,345,582.80, at which time Unicorp's entire interest in the Gas House lease was assigned, along with all security deposits and maintenance contracts, to the Gerries. Relations between Gas House and its new landlord, the Gerries, were often hostile, and in the sixth year of the lease, the Gerries evicted Gas House from the premises. In November, 1987, the Gerries filed for bankruptcy. Gas House then instituted an adversary proceeding in the bankruptcy court demanding its $100,000 termination fee pursuant to paragraph 30, as well as the return of its $2,800 security deposit and punitive damages. Gas House filed its complaint against Unicorp in January of 1988.

DISCUSSION

■ The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact

---

1. The term of the lease was from October 1, 1979 through September 30, 1989.

2. In 1984, IIT merged with Unicorp American Corporation (Unicorp) and continued as landlord of Hamilton House under the Unicorp name.

and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c); *see Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the non-moving party. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

It is a fundamental principle of contract law that "disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judg-ment." *Reed, Wible and Brown v. Mahogany Run Development Corp.,* 550 F.Supp. 1095, 1099 (D.V.I.1982), *citing, Par–Knit Mills v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3rd Cir.1980); *New Wrinkle, Inc. v. John L. Armitage & Co.,* 238 F.2d 753, 757 (3rd Cir.1956). "Contracts are not rendered ambiguous by the mere fact that the parties do not agree on their proper construction." *Id.* (citations omitted).

The Virgin Islands Statute of Frauds, 28 V.I.C. § 242 (1975), requires that "every contract for the leasing for a longer period than one year from the making thereof ... of any lands ... shall be void unless the contract ... is in writing...." As the contract is a written agreement, the court is bound by its terms and should discern the " 'general purpose of the agreement, as expressed by the words employed, when read and construed as a whole.' " *Vanguard Telecommunications, Inc. v. Southern New England Telephone Co.,* 900 F.2d 645, 651 (3rd Cir.1990), *quoting, Goldberg v. Commercial Union Ins. Co. of N.Y.,* 78 N.J.Super. 183, 188, 188 A.2d 188 (App.Div. 1963). "The essence of contract law is the objective intent of the parties and when there has been no allegation of mistake, fraud, overreaching or the like, it is not the function of the court to redraft a contract to be more favorable to a given party than the agreement he chose to enter." *Vanguard Telecommunications, supra; Brokers Title Co. v. St. Paul Fire & Marine Ins. Co.,* 610 F.2d 1174, 1181 (3rd Cir.1979) (citation omitted). *See Dyer v. Worldwide Protein, Inc.,* 21 V.I. 275, 278 (Terr.Ct.St. Croix 1985).

*A. Termination Fee:* As an initial matter, this court must determine whether paragraph 30 of the Gas House lease is ambiguous or vague, thus requiring the court to look beyond the objective manifestation of the parties to the facts and circumstances surrounding the signing of the lease. *See Stoner v. Bellows,* 196 F.2d 918, 921 (3rd Cir.1952), *cert. denied,* 345 U.S. 938, 73 S.Ct. 828, 97 L.Ed. 1365 (1953). The court is satisfied that the meaning of paragraph 30 is plain and unambiguous: Any landlord other than IIT (Unicorp) has

the right to terminate the lease subject to payment of a phased-out termination fee to the tenant. The court can find nothing in the words of paragraph 30 that would result in more than one meaning to a material term.[3] Furthermore, the lease is silent both as to any restrictions on the landlord to assign the lease and as to any obligation of the assignor to fulfill the obligations of its assignee, including an obligation to pay the termination fee.

■ In finding that the manifestation of the parties' intent in drafting paragraph 30 is unambiguous, the court notes that by plaintiff's own admission Unicorp expressly refused Gas House's request to insert language in the lease reflecting the financial ability of a subsequent landlord to pay the termination fee. Affidavit of T. Hadley at 8–9. Furthermore, applying the Virgin Islands Statute of Frauds, 28 V.I.C. § 242, the court finds that Unicorp's oral assurances could not amount to a separate enforceable contract, nor did they become part of the lease. Finally, plaintiffs have failed to present any evidence suggesting mistake, fraud or overreaching. The court finds the circumstances here fall squarely within the law's admonition to avoid writing a better contract for either party. Since paragraph 30 of the lease is unambiguous, Unicorp can not be held liable for the termination fee.

Faced with the fact that there is nothing in the language of the lease to support its claim for the termination fee from Unicorp, Gas House attempts to imply an obligation on Unicorp to guarantee a solvent assignee or otherwise ensure payment of the termination fee. For example, Gas House creatively attempts to use the implied obligation of good faith and fair dealing to require Unicorp to pay the termination fee, arguing that since Unicorp had exclusive control in choosing its assignee, it was obli-

gated to conduct a reasonable investigation of the assignee's financial soundness.

■ The court finds that plaintiff's argument must fail as a matter of law. First, to the extent plaintiff attempts to pin the Gerries' conduct on Unicorp, basic landlord-tenant law holds that implied covenants, such as the covenant of quiet enjoyment of a leasehold interest, run with the estate. An assignment deprives the assignor of its privity with the estate, thereby releasing it from liability for conduct attributable to the assignee. *See* Restatement (Second) of Property § 16.3, comment a; *Versatile Metals, Inc. v. Union Corp.*, 693 F.Supp. 1563, 1569 (E.D.Pa.1988); *Casperson v. Meech*, 583 P.2d 218 (S.Ct.Alaska 1978). Unicorp relinquished all its rights and obligations in the Gas House lease to the Gerries in 1985 and maintains that it has had no contact with Gas House since that time. Plaintiffs fail to submit any persuasive evidence suggesting that Unicorp encouraged or otherwise acted to cause a constructive eviction of Gas House.

Second, plaintiff's argument that a landlord is under a duty of good faith and fair dealing to ensure the financial solvency of its assignee so that a terminated tenant may receive the fruits of its contract (*i.e.*, the termination fee) does not comport with case law where the court has found the contract unambiguous. The cases cited in plaintiff's briefs apply to contracts in which "ambiguity or uncertainty is involved," *Heckard v. Park*, 164 Kan. 216, 188 P.2d 926 (S.Ct. Kansas 1948), or where the parties "have only failed to specifically express [terms] because of sheer inadvertence or because the term was too obvious to need expression." *Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 207 A.2d 522 (1965). Here, no ambiguity existed and no promise of the financial solvency of the assignee was made because defendants specifically refused to do so. Plaintiff

---

**3.** Gas House's reply brief makes a weak attempt to render the term "Landlord" vague and ambiguous by reference to paragraph 1 of the lease, which defines "Landlord" as including "its successors and assigns (where the context permits)." Since Unicorp is the successor of IIT and the Gerries were Unicorp's assignees, Gas

House argues that the court must find the term ambiguous. The argument completely lacks merit. First, the context permits only one interpretation of "Landlord" in paragraph 30. Second, the argument flies in the face of Gas House's own purported understanding of the clause at the time it was written.

mightily tries to persuade the court that the unique circumstances of this case should convince it to stretch the implied obligation of good faith to a landlord's conduct in selecting its assignee. The court declines to reach such a holding and rests on the law as previously discussed.[4]

■■■ *B. The Security Deposit:* Plaintiff also seeks return of its $2,800 security deposit. Assuming, *arguendo*, that Gas House is entitled to its security deposit, the court notes paragraph 5 of the lease, which reads in pertinent part:

Landlord may deliver the funds deposited hereunder by Tenant to the purchaser of Landlord's interest in the leased premises, in the event that such interest be sold, and thereupon Landlord shall be discharged from any further liability with respect to such deposit.

Unicorp assigned Gas House's security deposit to the Gerries when it sold Hamilton House and Gas House has submitted no evidence suggesting that Unicorp still holds the security deposit or controls it in some way. Again, the lease explicitly and unambiguously releases Unicorp from responsibility for the security deposit. Therefore, defendant is entitled to summary judgment on this issue.

■■■ *C. Rule 11:* Both parties have requested the court to impose sanctions pursuant to Rule 11, Fed.R.Civ.Pro. The court will consider defendant's argument first.

Rule 11 states, in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation.

\*　　\*　　\*　　\*　　\*　　\*

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

The goal of Rule 11 is correction and deterrence of litigation abuse, not wholesale fee shifting. Advisory Committee Notes, 1983 Amendment. In determining whether a party has abused the litigation process, the court is mindful of the Third Circuit's guidance that an adverse ruling is not enough to impose Rule 11 sanctions. *See Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 157–58 (3rd Cir.1986). Likewise, advocating new or novel legal theories does not trigger a sanction award so as not to inhibit imaginative legal approaches to applicable law. Advisory Committee Notes, 1983 Amendment. However, "[c]ounsel or client violates the Rule by mounting an attack on existing law not in good faith but rather prompted by such improper considerations as harassment or undue delay. Creativity by itself is not enough. 'The creativity must be in service of a good faith application of the law or at least a good faith request for a change in the law.'" *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 484 (3rd Cir.1987) (citation omitted).

■■■ Unicorp claims that Gas House's amended complaint "has been interposed primarily for the purpose of extorting money from Unicorp." Unicorp bases this claim on two conversations its counsel held with former co-counsel for Gas House, in which Gas House's former co-counsel purportedly said that the only reason Unicorp has been sued is because Unicorp is a "deep pocket." Letter from Philip R. Hoffman to Constance E. Holmes, May 23, 1988. Gas House's strategy apparently was to try to recover money from Unicorp since it could not obtain anything from the bankrupt Gerries. In further support of this

---

**4.** The court has also considered and rejected plaintiff's alternative—and equally creative—arguments of a landlord's implied warranty of workmanship and fitness in choosing its assignee and the doctrine of unjust enrichment.

characterization of plaintiff's plan of attack, defendant points to "irrelevant" statements and attachments in Gas House's briefs indicating the 1983–84 merger of IIT and Unicorp for $62 million. Unicorp also was convinced of the soundness of its legal argument, which the court has found was correct. On these grounds, defendant repeatedly requested plaintiff to dismiss its complaint or face a request for Rule 11 sanctions.[5]

In defense of this characterization, Gas House argues that its reference to the value of the IIT/Unicorp merger was necessary to counter Unicorp's denial of plaintiff's factual allegation that Unicorp is a subsidiary of Unicorp Canada Corporation. Otherwise, counsel for Gas House fails to deny Unicorp's allegation that it was being sued solely because of its "deep pockets." Instead, Gas House seeks shelter in the harbor of Rule 11's "good faith argument for the extension of existing law," a position it labeled as such in the concluding paragraphs of its reply brief.[6]

 The question faced by the court is whether plaintiff's creativity was prompted by such improper considerations as harassment or bad faith. More specifically, the question is whether an attempt to recover losses from a defendant because it has the ability to pay qualifies as harassment or bad faith. Although it is a close call, the court concludes that plaintiff did not sue this defendant for an improper purpose. Suing a corporation or individual with deep pockets in the hopes of recovering a plaintiff's losses is not sanctionable as long as there is some merit to plaintiff's argument for the extension, modification or reversal of existing law. Although the court has already noted that the underlying basis of plaintiff's legal theory was indeed creative, it can not say that it was meritless. Therefore, the court declines to impose Rule 11 sanctions.

Plaintiff's Rule 11 motion is based on an affidavit submitted by Philip Hoffman, Unicorp's co-counsel. Gas House contends that the Hoffman affidavit is not based on personal knowledge and, in part, states an opinion; therefore, plaintiff argues, the court should not consider it in reaching a decision on the summary judgment motions and should impose Rule 11 sanctions and/or reasonable costs and fees pursuant to Rule 56(g),[7] Fed.R.Civ.Pro.

 The court will not impose sanctions under Rule 56(g) unless it is convinced that the Hoffman affidavit was presented in bad faith or solely for the purpose of delay. Moreover, the court may not apply sanctions when, although an affidavit was entered in bad faith, there was no prejudice to the opposing party. *See Faberge, Inc. v. Saxony Products, Inc.,* 605 F.2d 426 (9th Cir.1979); Wright, Miller & Kane, *Federal Practice and Procedure,* § 2742 at 565.

The Hoffman affidavit describes, with varying factual detail, the various exhibits attached to the motion for summary judgment. Most of these exhibits were provided by Gas House during discovery. Therefore, Gas House's contention that statements in the Hoffman affidavit associated with these exhibits were not based on personal knowledge is frivolous. The Hoffman affidavit also states, with regard to

---

5. Defendant also argues that it is entitled to an award of attorney's fees pursuant to paragraph 14 of the lease, which states: "Tenant shall also pay all costs, expenses and reasonable attorney's fees that may be incurred or paid by Landlord in enforcing the covenants and agreements in this lease." The argument must fail because (1) Unicorp was no longer the landlord when this suit was commenced, and (2) assuming it could be construed as the landlord, its role in this suit is as a defendant, not as a landlord *enforcing* the lease.

6. Gas House can not be faulted for its failure to label properly the argument it was advancing.

*Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 96 (3rd Cir.1988) ("Counsel should not be sanctioned for choosing the wrong characterization for their theories.").

7. Rule 56(g) states in relevant part:
 Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur....

defendant's Rule 11 motion, that "Gas House's amended complaint is totally without merit and has been interposed primarily for the purpose of extorting money from Unicorp." Gas House spends several pages of its brief arguing that, because this statement is not one of fact but of opinion, it is motivated by bad faith.

Gas House is correct that the sentence quoted above is an opinion, but this court can not, without more, jump to the conclusion that it was interposed in bad faith. It could just as easily have been negligent error, particularly since the same sentence appears in the Rule 11 section of Unicorp's brief. Even if the court was convinced of bad faith, it can not understand how plaintiff was in any way prejudiced by it. The court's decision awarding summary judgment is not based on Hoffman's statement as a statement of fact and, therefore, plaintiff can not argue prejudice.

 Affidavits filed in connection with motions may be the basis for Rule 11 liability. *See, e.g., Stewart v. RCA Corp.*, 790 F.2d 624, 632 (7th Cir.1986); Vairo, *Rule 11 Sanctions*, § 4.01[d](5) at 188 (1990). Having found no proof of bad faith or other improper purpose, however, the court concludes that the Hoffman affidavit did not violate Rule 11.

## CONCLUSION

For the reasons set forth above, the court finds that plaintiff's suit to force its former landlord to pay a termination fee on grounds that it was under an implied duty to find a new landlord who would pay such fee is dismissed with prejudice as a matter of law. Defendant's motion for summary judgment will, therefore, be granted. Both parties' motions for Rule 11 sanctions will be denied.

An appropriate order will be entered.

## ORDER

This matter having come before the court on defendant's motion for summary judgment, plaintiff's cross-motion for summary judgment and both parties' motions for Rule 11 sanctions; and

The court having considered the submissions of the parties; and

For the reasons set forth in the opinion accompanying this order; and

For good cause shown;

IT IS this 25 day of January, 1991 hereby

ORDERED that defendant's motion for summary judgment is GRANTED WITH PREJUDICE, plaintiff's cross-motion for summary judgment is DENIED WITH PREJUDICE, and both parties' motion for Rule 11 sanctions and plaintiff's motion pursuant to Rule 56(g), Fed.R.Civ.Pro. are DENIED.