**L.E.B. ENTERPRISES, INC., Plaintiff,**
**v.**
**BARCLAYS BANK, P.L.C., Defendant**

Civ. No. 527/1994

Territorial Court of the Virgin Islands

Div. of St. Croix

July 7, 1995

SCOTT A. BURTON, ESQ., HODGE & SHEEN, P.C., *for Plaintiff*

GEORGE S. ELTMAN, ESQ., *for Defendant*

STEELE, *Judge*

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on defendant's **Motion for Summary Judgment** and plaintiff's **Counter Motion for Summary**

**Judgment.** For the reasons stated herein, defendant's motion will be **GRANTED** and plaintiff's motion will be **DENIED**.

### FACTS

Virtech, Inc. (hereinafter "Virtech") is a plastic manufacturing company on the island of St. Croix. Plaintiff L.E.B. Enterprises, Inc. (hereinafter "L.E.B.") is a Florida corporation that sells plastic resins and L.E.B. desired to sell plastic resins to Virtech on credit. Lowell Berkson, President of L.E.B., sent a letter of inquiry on July 24, 1992 to Barclays Bank, P.L.C. (hereinafter "Barclays") regarding Virtech.[1] Virtech maintained a checking account at Barclays and had obtained a loan from Barclays. Mr. Berkson's July 24, 1992 letter stated as follows:

> I called the bank today for Mr. Richard Grant and was told he was off the island and that if I sent a fax you would respond with the credit information needed on the above account.
>
> 1)  What is their average balance in their account.
> 2)  What is their line of credit? How much is is [sic] active?
> 3)  How long has your bank been doing business with Virtech?
> 4)  What is their financial viability?
> 5)  Do they pay their bills on time?
>
> We await your immediate response. Thank you.

Betty Griff, who was employed by Barclays as a Loan Administration Supervisor at the time of Mr. Berkson's inquiry, sent the following letter dated July 28, 1992 in response:

> We refer to your credit inquiry of 7/24/92 and advise that the above captioned company has maintained a checking account with us since October, 1989. This has been satisfactorily maintained. Their average balance is $4,500 to $30,000.
>
> In July, 1990, we extended a loan in the amount of $325,000, with maturity in 1997. The present balance is $279.793. This account is maintained satisfactorily.
>
> The principles [sic] enjoy a reputation of honesty and integrity.

---

[1] The July 24, 1992 letter was sent to the attention of Betty Griff.

Barclays responded to L.E.B.'s inquiry regarding Virtech without any charge to L.E.B.

L.E.B. subsequently shipped plastic resin to Virtech on credit and Barclays served as L.E.B.'s agent for collection of a sight draft in the amount of twenty-six thousand three hundred sixty-five dollars and nine cents ($26,365.09). Virtech defaulted in paying the full amount owed to L.E.B. and Barclays was unable to collect seventeen thousand five hundred thirty-six dollars and seventy-two cents ($17,536.72). Barclays charged L.E.B. one hundred forty-four dollars and thirty-eight cents ($144.38) for the services Barclays provided to L.E.B. with reference to the sight draft. On February 8, 1993, Virtech filed for Bankruptcy under Chapter 11 of the United States Bankruptcy Code.

Plaintiff filed this action on June 24, 1994 alleging that Barclays negligently conducted its financial inquiry of Virtech. Barclays moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and also moved for Rule 11 sanctions. L.E.B. opposed Barclays' motions and filed a counter motion for summary judgment.

## DISCUSSION

Barclays contends that there are no genuine issue of material fact and that they are entitled to judgment as a matter of law. Barclays argues that L.E.B. failed to establish that Barclays furnished any false information to L.E.B. in response to their inquiry. L.E.B. contends that Barclays negligently misrepresented information and omitted significant information that Barclays had in its possession. Additionally, L.E.B. contends that Barclays misled L.E.B. into believing that Virtech was financially sound with certain statements that Barclays made.

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

44

Summary judgment is a drastic remedy and any doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Board of Directors of Shibui Condominium Ass'n v. Consolidated International Inc.*, 28 V.I. 57, 69 (Terr. Ct. 1993)(citation omitted).

When reviewing a motion for summary judgment, all inferences must be viewed in the light most favorable to the party opposing the motion. *Id.*(citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied* 429 U.S. 1038, 97 S. Ct. 732 (1977)). However, a party opposing a summary judgment motion may not stubbornly rely upon allegations and denials in the pleadings when faced with documentation showing the absence of triable issues of fact. *Battle v. Industrious*, 26 V.I. 83, 85 (Terr. Ct. 1991)(citation omitted). A party opposing a summary judgment motion must present specific facts that show a genuine issue for trial. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-26 (1986)). Summary judgment must be granted when the evidence presented is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B. Negligent Misrepresentation

In the absence of any local laws to the contrary, the rules of the common law as expressed in the Restatement of Law are the rules of decision in the courts of the Virgin Islands. V.I. CODE ANN. tit. 1, § 4. There being no local law to the contrary on the issue of negligent misrepresentation, this Court looks to the Restatement of Law. RESTATEMENT (SECOND) OF TORTS § 552 describes the tort of negligent misrepresentation as follows:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transaction, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

■ Therefore, pursuant to § 552 of the Restatement (Second) of Torts, L.E.B. must establish: (1) that Barclays supplied false information; (2) that the information was supplied in the course of Barclays' business, profession or employment, or in a transaction in which Barclays has a pecuniary interest; (3) that L.E.B. was guided by the information in its business transactions; (4) that L.E.B. suffered pecuniary loss as a result of their justifiable reliance upon the information; and (5) that Barclays failed to exercise reasonable care or competence in obtaining or communicating the information. Each element of the tort of negligent misrepresentation must be established by plaintiff. Summary judgment must be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 316, 322 (1986). Therefore, this Court must consider whether plaintiff established each element of the tort of negligent misrepresentation. Plaintiff's failure to make a sufficient showing as to any element of the tort of negligent misrepresentation will result in summary judgment being entered against plaintiff. *Id.*

## C. No False Information Was Supplied to L.E.B. by Barclays

A vital element of the tort of negligent misrepresentation is the falsity of the representation. *Gilmore v. Ute City Mortg. Co.*, 660 F. Supp. 437, 441 (D. Colo. 1986). The tort of negligent misrepresentation requires an *express* representation which is false or misleading at the time it is made. *Navarro v. Government of the Virgin Islands,*

46

18 V.I. 473, 476 (Terr. Ct. 1981) (emphasis added). Accordingly, L.E.B. must make a sufficient showing to establish the falsity of the representations in Ms. Griff's letter.

The first representation in the Griff letter is that Virtech satisfactorily maintained a checking account with Barclays since 1989 and their average balance is $4,500 to $30,000. L.E.B. did not challenge the veracity of this representation. The second representation is that in July of 1990, Barclays extended a loan to Virtech in the amount of $325,000 and that the account is maintained satisfactorily. Plaintiff alleged in its complaint that Virtech had not adequately maintained its loan. However, an affidavit by James Brisbois, manager of the St. Croix branch of Barclays, indicates that he examined the account records of the loan agreement between Barclays and Virtech and that as of June 28, 1992, the loan had been maintained by the borrower in a satisfactory manner. Mr. Brisbois further states that Virtech made its next installment payment on the loan on or about August 10, 1992 and thereafter, Virtech made no payments for the rest of the year. Plaintiff did not provide any information to challenge the veracity of Mr. Brisbois' assertions. Accordingly, plaintiff failed to establish that the second representation is false.

The third representation in the Griff letter is that "The principles [sic] enjoy a reputation of honesty and integrity." An affidavit by Lowell Berkson indicates that this statement was assuring to him and that he relied on this statement in deciding to extend credit to Virtech. However, L.E.B. does not contest the veracity of the representation that the principals of Virtech enjoy a reputation of honesty and integrity. Rather, L.E.B. contends that it assumed that the third representation went to the financial soundness of the corporation itself. Even after viewing the evidence in the light most favorable to L.E.B., as this Court must do, the third representation does not indicate that Virtech was financially sound. Ms. Griff mentions the *principals* reputation for honesty and integrity and she does not discuss the soundness of Virtech. The mere fact that the principals of a corporation have a reputation for honesty and integrity does not mean that the corporation itself is financially sound. Accordingly, this Court does not find that the third representation was false or misleading.

47

■ Plaintiff argues that Barclays can be held liable not only for what Barclays affirmatively represented to L.E.B., but also for information that Barclays failed to provide to Virtech. This argument is legally incorrect because the tort of negligent misrepresentation requires an *express* representation which is false or misleading at the time it is made. *Navarro*, 18 V.I. at 476 (emphasis added). Additionally, plaintiff failed to establish that Barclays knew certain information[2] about Virtech, but failed to report it to L.E.B. Plaintiff submitted an affidavit by Paul Brown, vice-president of Virtech, stating that "Barclay's [sic] was aware that Virtech, Inc., had been experiencing cash-flow problems *in 1992*" (emphasis added). Mr. Brown's affidavit is deficient because it does not state whether Virtech's cash flow problem was explained to Barclay before or after July 28, 1992.[3] Therefore, plaintiff failed to establish that Barclays knew certain information about Virtech that Barclays failed to disclose.

■ Even if Barclays knew on July 28, 1992 that Virtech was experiencing cash flow problems, Barclays did not have any obligation to disclose this information to L.E.B. Barclays, at no charge to L.E.B., provided L.E.B. with a *limited* response to its inquiry. Mr. Berkson's July 24, 1992 letter to Barclays indicated that the letter was regarding a *credit reference for Virtech* (emphasis added). Barclays provided L.E.B. with a credit reference and Barclays did not provide L.E.B. with a credit risk assessment. Barclays did not advise L.E.B. as to whether or not to extend credit to Virtech. Rather, Barclays merely provided L.E.B. with information regarding Virtech's checking account and loan with Barclays. An affidavit by Betty Griff indicates that Barclays did not answer

---

[2]L.E.B. contends that Barclays knew that:

  1. Virtech had been virtually non-operational since Hurricane Hugo in 1989.

  2. Virtech's biggest customers, Caledonia Springs and Becton-Dickinson, were not paying their invoices on a timely basis.

  3. The actions of Caledonia Springs and Becton-Dickinson caused cash flow problem for Virtech.

  4. Virtech's overdraft privileges were under review and/or recently suspended.

[3]Mr. Brown's affidavit is also deficient in that it does not state who conveyed the information to Barclays and who at Barclays received the information.

the question as to Virtech's financial viability or the question as to whether Virtech paid its bills on time. Barclays cannot be held liable for L.E.B.'s loss because Barclays provided accurate information to L.E.B. regarding Virtech's checking account and loan with Barclays.

An essential element of the tort of negligent misrepresentation is the falsity of the representation. Plaintiff failed to make a sufficient showing that any information in the July 28, 1992 letter was false. Accordingly, summary judgment must be entered against plaintiff because it failed to make a showing sufficient to establish an essential element of plaintiff's case, and on which plaintiff will bear the burden of proof at trial. *Celotex Corp*, 477 U.S. at 322. Because this Court will enter summary judgment against plaintiff, plaintiff's counter motion for summary judgment must necessarily be denied.

### D. Rule 11 Sanctions

Barclays moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Barclays contends that this case should never have been filed because it has no merit and that plaintiff's claim is groundless as a matter of fact and law. Rule 11 provides in pertinent part that:

(b) REPRESENTATION TO COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

The mere fact that this Court will enter summary judgment against plaintiff is not a basis in and of itself for the imposition of

Rule 11 sanctions. *Hadley v. Gerrie*, 26 V.I. 203, 212 (D.V.I. 1991)(citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157-58 (3d Cir. 1986)). "Likewise, advocating new or novel legal theories does not trigger a sanction award so as not to inhibit imaginative legal approaches to applicable law." *Id.* (citing Advisory Committee Notes, 1983 Amendment).

■ This Court does not find that plaintiff's action is completely devoid of merit or that plaintiff filed the action for any improper purpose. Accordingly, defendant's motion for Rule 11 sanctions must be denied.

## CONCLUSION

Plaintiff failed to make a showing sufficient to establish an essential element of the tort of negligent misrepresentation. Plaintiff failed to show that defendant made any false representations. Accordingly, defendant's motion for summary judgment will be granted and plaintiff's counter motion for summary judgment must be denied. Barclays failed to establish that plaintiff's complaint is devoid of merit or that it was filed for any improper purpose and therefore Barclays motion for Rule 11 sanctions must be denied.

## ORDER

In accordance with the Memorandum Opinion of even date, it is hereby

ORDERED that defendant's **Motion for Summary Judgment** is GRANTED; and it is further

ORDERED that plaintiff's **Counter Motion for Summary Judgment** is DENIED; and it is further

ORDERED that defendant's Motion for Rule 11 Sanctions is DENIED.