**IN RE: TUTU WATER WELLS CONTAMINATION LITIGATION, THIS DOCUMENT RELATES TO TEXACO, INC. AND TEXACO CARIBBEAN, INC. ("TEXACO"), SUCCESSOR TO VERNON MORGAN**

Master Docket File No. 1989-107

Civil No. 1996-54(B)(SSB)

District Court of the Virgin Islands,

Division of St. Croix

December 15, 1998

ADDISON J. MEYERS, ESQ., O'Connor & Meyers, P.A., *for Third-Party Plaintiffs*, Coral Gables, FL.

CHARLES J. CURRAN, ESQ., *Co-Counsel for Third-Party Plaintiffs*, Tallahassee, FL.

TRESTON E. MOORE, ESQ., *Co-Counsel for Third-Party Plaintiffs*, St. Thomas, U.S. Virgin Islands.

KIMBERLY BOLDT, ESQ., Russo, Wells & Associates, P.A., *Co-Counsel for Third-Party Plaintiffs*, Miami, FL.

WILFREDO A. GEIGEL, ESQ., *Counsel for General Accident Co. of Puerto Rico, LTD.*, St. Croix, U.S. Virgin Islands.

DENISE FRANCOIS, ESQ., Hodge & Francois, *Counsel for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*, St. Thomas, VI.

HARRY P. COHEN, ESQ., Rosenman & Colin, LLP, *Counsel for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*, New York, NY.

ROBERT REEDER, ESQ., Cozen & O'Connor, *Counsel for CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America ('CIGNA')*, Philadelphia, PA.

BROTMAN, *District Judge (Sitting By Designation).*

## I. INTRODUCTION AND BACKGROUND[1]

This case arises out of an insurance coverage dispute between Third-Party Plaintiffs Texaco Inc. and Texaco Caribbean, Inc., (collectively hereinafter "Texaco") as the Successor to Vernon Morgan, and several purported insurance carriers it claims have breached contracts to insure Vernon Morgan and have refused, in bad faith, to defend and indemnify him against numerous environmental actions. These actions resulted from Vernon Morgan's alleged negligence in allowing hazardous chemicals to be discharged from underground storage tanks at the Tutu Texaco Service Station ("Service Station") into the Turpentine Run Aquifer in St. Thomas, United States Virgin Islands.

Beginning in 1972, Texaco Caribbean Inc., a subsidiary of Texaco Inc. leased property to Morgan from which Morgan operated the Tutu Texaco Service Station. Morgan is the owner, sole shareholder, and an employee of Tutu Texaco Service Station. In September 1976, Morgan discovered the loss of approximately 2,200 gallons of gasoline from a leaking pipe joint. In late 1977, Morgan discovered the loss of approximately 240 gallons of fuel due to a leak in a fuel delivery line. After both discoveries, Morgan apprised Texaco of the situation. In addition, on two occasions during the 1980's, one of three unlined underground storage tanks on the site were taken out of service due to a suspected leak.

In 1989, various claimants instituted litigation against Texaco and Morgan for damage caused by the aforementioned discharges of hazardous substances from storage tanks and fuel delivery system located at the Site. *See* ¶¶ 17-20 to Texaco's First Amended

---

[1] This is the first opinion in a set of three opinions. These three opinions address in order:

1. Texaco's Motion to Dismiss Counterclaim of Fireman's Fund Insurance Company Against Texaco Inc., and Texaco Caribbean Inc., As Successor to Vernon Morgan.
2. Texaco's Motion for Partial Summary Judgment on the Duty to Defend against Fireman's Fund Insurance Company and CIGNA's Crossmotion for Summary Judgment Against Texaco Inc., and Texaco Caribbean Inc., As Successor to Vernon Morgan.
3. Texaco's Motion for Partial Summary Judgment on the Duty to Defend by Defendant, General Accident Insurance Company.

The background established in this Opinion is applicable to all three Opinions.

Third-Party Complaint, annexed to the Affidavit of Paul Leodori as Exhibit A ("Texaco's Complaint").

In December 1990 Texaco settled the matter entitled *Total Vision, Inc. d/b/a Tutu Water Co., et al v. Morgan, et al.*, (Case No. 1989-107) ("*Total Vision*") for $700,000. *See* ¶ 36 to Texaco's Complaint. In March 1992 Texaco settled the matter entitled *Four Winds Plaza Partnership v. Morgan, et al.* (Case No. 1989-220) ("*Four Winds*") for $2,250,000. *See* ¶ 37 to Texaco's Complaint. On or about February 1994, Texaco settled the matter *Harthman et al. v. Morgan, et al.* (Case No. 1989-220) for $1,000,000 ("Harthman"). All three settlements included the release of all claims against Morgan. *See* Texaco's Complaint at ¶38.

Morgan was represented by John Zebedee, Esq. in *Total Vision, Four Winds*, and *Harthman* ("underlying litigation"). Payment for Morgan's defense was originally provided by American Trust Insurance ("ATI") after June 5, 1990. On or about May 1991, ATI refused to continue to provide Morgan a defense in the underlying litigation. *See* Texaco's Complaint at ¶31. Left with no source of defense payment, Zebedee addressed the issue to CIGNA Corporation, Fireman's Fund Insurance Company, as a former member of AFIA, AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, and CIGNA International Corporation and Insurance Company of North America. These companies refused to provide a defense. Ultimately, Texaco paid John Zebedee, Esq. to represent Morgan in these matters. *See* Letter from John Zebedee to Michael Frantz dated August 14, 1991 attached as Exhibit N to Leodori Aff.). In addition, the same letter discussed a possible arrangement between and among Texaco, Morgan and John Zebedee, Esquire.

> In exchange for Texaco assuming all obligations for the payment of Morgan's legal defense fees in this case, Texaco has demanded that it receive an assignment from Mr. Morgan and our firm of any and all rights which either may have against Mr. Morgan's insurers, including American Trust Insurance Company, CIGNA (through its acquisition of AFIA through Fireman's Fund), and General Accident Insurance Company.

*Id.*

Meanwhile, as litigation continued in the Virgin Islands concerning environmental damage, Texaco on its own behalf filed an action against numerous insurers in the Superior Court of the State of California for the County of Los Angeles entitled *Four Star Oil & Gas Company, et al. v. Allianz Insurance Company et al.*, Case No. BC 036944 ("California Litigation"). Included among Texaco's claims in the California Litigation were its incurred and anticipated liabilities arising at and from the Site. (*See* Exhibits F, G and H to Leodori Affidavit) Texaco ultimately agreed to a comprehensive release of environmental coverage claims against various insurance companies in the context of the California Litigation. Specifically, pursuant to an "AGREEMENT OF SETTLEMENT, COMPROMISE AND RELEASE" ("Release Agreement") dated May 10, 1993, CIGNA[2] agreed to pay Texaco $20,250,000. The Release Agreement provided that:

CIGNA shall have no further obligation under the Policies or otherwise to pay for, or to make indemnity or defense payments with respect to, Environmental Damage Claims other than the payments [of $20,250,000] specified in paragraph 3.2 hereof.

Release Agreement at ¶3.5

Pursuant to the Release Agreement, a 'claim' was defined as:

any past, present or future actual or potential claims, insurance claims, reinsurance claims, cross-complaints, third-party claims, rights, proceedings, demands, requests, suits, lawsuits, administrative proceedings, causes of actions, orders, actions, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, torts, controversies, judgments; executions, liabilities and obligations whatsoever whether in law or

---

[2] In the Release Agreement, "CIGNA" included CIGNA Insurance Company, Insurance Company of North America, Insurance Company of North America (U.K.) Limited, CIGNA Property and Casualty Insurance Company, California Union Insurance Company, Atlantic Employers Insurance Company, CIGNA insurance Company of Illinois, CIGNA Insurance Company of Texas, Pacific Employers Insurance Company, CIGNA Reinsurance Company (U.K.) Limited, Central National Insurance Company of Omaha, and Highlands Insurance Company.

equity, including without limitation any and all claims for bad faith, alleged breach of the duty of good faith and fair dealing, claims for any other alleged misconduct or extracontractual claims.

The agreement in ¶ 2.5 defined "Environmental Damage Claims" as:

All Claims, losses sustained or costs incurred in connection with Environmental Damage. Environmental Damage Claims include without limitation, any and all Past, existing, future or potential: (a) Claims brought by or behalf of any Person or any actions taken by Texaco (voluntarily or otherwise) in response to any such Claims because of losses sustained or involving, arising out of, or related in any way to Environmental Damage, including, without limitation, Claims to recover cleanup or remediation costs, to impose statutory fines or penalties, or to obtain injunctive or declaratory relief . . .

Furthermore, ¶ 2.9 defined Texaco:
"Texaco" means Texaco Inc., its past, present, and future employees, officers, directors, principals, subsidiaries, affiliates, agents, attorneys, representatives, predecessors, successors and assigns, and any Person insured by any of the Policies including, but not limited to, any named insured, person insured, additional insured, additional named insured, and all Persons identified as Plaintiffs in the Fourth Amended Complaint filed by Texaco in the California Action, including but not limited to, all Persons identified in Exhibits A to D to said Complaint. Notwithstanding anything else in this paragraph 2.9 to the contrary, Texaco shall not include Texaco Canada Inc.

Finally, in ¶ 4.1, the Release Agreement states that:

4.1. In consideration of the promises contained in the Agreement, except as otherwise provided in paragraphs 2.5 and 2.6 herein, and except with regard to any obligation CIGNA may independently owe Texaco Canada, Texaco and HIL hereby release and discharge CIGNA

from any liability, duty or obligation, known or unknown, (including, without limitation, any duty to investigate, defend or indemnify) for any and all past, pending, or future Environmental Damage Claims under the Policies.

Two years after the Release Agreement was executed, Texaco settled all of its outstanding claims against Morgan in an agreement executed June 27, 1995 entitled "CONSENT TO JUDGMENT AND ASSIGNMENT" ("the Assignment"). Under the Assignment, Morgan consented to the entry of judgment against him on the underlying actions in the amount of $16,682,392. Assignment at ¶2. Having paid off all claims on Morgan's behalf, Texaco nevertheless agreed not to execute, record, or collect on its judgment against him. *Id.* at ¶7. In exchange, Morgan agreed to assign to Texaco all claims that Morgan had against "any and all insurance carriers insuring Morgan and/or Texaco Tutu Service Station, for the claims of the Plaintiffs and the crossclaims of Texaco for contribution and indemnity. . ." *Id.* at ¶3.

On December 7, 1995, Morgan filed a Third-Party Complaint against various other insurers claiming bad faith and seeking defense costs and indemnity under the alleged policies issued by the insurers to Morgan, respecting alleged contamination arising from the leaking underground storage tanks and fuel delivery system at the Site.

On March 2, 1998, this Court found that Texaco, not Morgan, *was* the real party in interest as "successor" to Morgan. (*See* ORDER ON MOTIONS FOR SUMMARY JUDGMENT entered on March 2, 1998 annexed to the Affidavit of Paul Leodori as Exhibit L) (See OPINION ON MOTIONS FOR SUMMARY JUDGMENT dated March 2, 1998 annexed to the Affidavit of Paul Leodori as Exhibit M).

In Texaco's first-amended third-party complaint, filed April 3, 1998, Texaco claims included "bad faith" and "failure to defend and indemnify" against several of the insurance companies with which Vernon Morgan had contracted. Texaco as successor to Vernon Morgan seeks insurance coverage and payment of its underlying disputes against Morgan as reflected in its judgment of $16,682,392.

The Defendants included Fireman's Fund Insurance Co. ("FFI"), AFIA Worldwide Insurance ("AFIA"), CIGNA Corporation ("CIGNA"), CIGNA International Corporation ("International"), Insurance Company of North America ("INA"), and General Accident Insurance Co. Puerto Rico Ltd. ("GAI"). The complaint alleged that from January 3, 1974 to January 3, 1986, FFI, through its general agent and authorized representative, West Indies Insurance Agency ("West Indies") insured Morgan and/or TuTu Texaco Service Station, Inc. *See* First Amended Third-Party Complaint of Texaco Inc. and Texaco Caribbean Inc. ("Third-Party Complaint") at ¶10.[3] AFIA was an unincorporated association of insurance companies, including FFI. *Id.* at ¶ 5. CIGNA jointly acquired the assets and liabilities of AFIA and its member companies including FFI on December 30, 1983. *Id.* at ¶ 6. International and INA are foreign owned corporations wholly-owned indirectly by CIGNA that jointly acquired the assets of AFIA, including FFI. *Id.* at ¶ 7. The Complaint also alleged that from January 3, 1986 to January 3, 1987, GAI insured Morgan and/or Tutu Texaco Service Station.[4] In addition, American Trust Insurance ("ATI") insured Morgan for the policy year 1987. Id. at ¶31.

Texaco further alleged that Morgan's attorney, John Zebedee, Esq. repeatedly notified FFI/AFIA/CIGNA/INTERNATIONAL/INA, and GAI of the pending suits and of Morgan's entitlement to a defense and indemnification under the policies. *Id.* at ¶21. Texaco contended that GAI refused to acknowledge Morgan's notification, and by omission refused to provide him with a defense or acknowledge its duty to indemnify Morgan. *Id.* at ¶22. As for FFI/AFIA/CIGNA/INTERNATIONAL/INA, Texaco argued that the group insisted that before they would provide Morgan a defense, or agree to indemnify him in the underlying actions, Morgan had to produce the "actual" policies issued to him by West Indies. Id. at ¶23. Due to the chaos resulting from a recent hurricane, Texaco alleged that Morgan could not at that time locate or produce said policies. Furthermore, Texaco contended that West

---

[3] The policies included Nos. LS-185 08 85; 50 00 02 19; 50 00 278; 50 00 841; 50 01 328; and SMP 4926.

[4] The policy was identified as # SMP 102542.

Indies retained proof of Morgan's insurance. *Id.* at 24. Despite this verification, Texaco claimed that FFI/AFIA/CIGNA/INTERNA-TIONAL/INA refused to defend or indemnify. *Id.* at ¶¶22, 25.

The alleged policies produced by Morgan contain a pollution exclusion. These policies allegedly state:

This insurance does not apply:

(o) to **bodily injury** or **property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*See* Statement of Material Facts Not at Issue In Support of Plaintiff's Motion for Partial Summary Judgment on the Duty To Defend Attached as Exhibit A (emphasis in original).

On August 5, 1998, CIGNA International Corporation, Insurance Company of North America, and AFIA filed counterclaims against Texaco that include five counts alleging that Texaco committed fraud or similar conduct (i.e. Legal Fraud, Equitable Fraud, Misrepresentation, and Bad Faith). On September 9, 1998, Fireman's Fund Insurance Company also filed a counterclaim. Texaco's first motion seeks to dismiss Counts II, III, IV, V, and VI of CIGNA International Corporation, Insurance Company of North America, and AFIA's counterclaims. Texaco's second motion seeks identical dismissal of Counts II, III, IV, V, and VI of Fireman's Fund Insurance Company's counterclaim. For purposes of this motion, CIGNA International Corporation, Insurance Company of North America, AFIA, and Fireman's Fund Insurance Company shall collectively be referred to as CIGNA.

## II. DISCUSSION

### A. 12(b)(6) STANDARD

In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted

pursuant to the Federal Rules of Civil Procedure 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *ALA v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994) (citations omitted); *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir. 1991) (citations omitted). The Court cannot dismiss Plaintiff's Complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) (citations omitted); *D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir. 1984). Moreover, federal pleading rules are liberal. Generally, a Complaint need not spell out the theory of liability under which a plaintiff hopes to recover. *See Evans Prod. Co. V. West Am. Ins. Co.,* 736 F.2d 920, 923 (3d Cir. 1984). In making a claim of fraud, however, the plaintiff must plead with particularity, pursuant to Fed. Rule. Civ. P. 9(b).

## B. LEGAL FRAUD

■ In order to establish legal fraud, a claim must sufficiently state the elements thereof, namely (1) a false representation of a fact that is material; (2) the defendant's intent that the statement should be acted upon; (3) reliance upon such a statement by the person claim to be deceived; and (4) damages. *Government Guarantee Fund of the Republic of Finland v. Hyatt Corporation,* 35 V.I. 356, 955 F. Supp. 441 (D.V.I. 1997), *citing Navarro v. Government of the Virgin Islands,* 1981 U.S. Dist. LEXIS 9333, 18 V.I. 473, 477 (D.V.I. 1981).

The Restatement (Second) of Torts provides that "[a] representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." Restatement (Second) of Torts, § 530. However, "[t]he intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance, nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into." Restatement (Second) of Torts, § 530 cmt. d., at 65.

288

Furthermore, Rule 9(b) of the Federal Rules of Civil Procedure states:

> Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b). In *Tradewinds v. Citibank*, 1983 U.S. Dist. LEXIS 10237, 20 V.I. 152 (D.V.I. 1983), the court elaborated on Rule 9(b)'s requirement, stating that Rule 9(b)'s "reference to 'circumstances' is to matters such as time, place and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." *Id.* at 160, *citing George v. Newman*, 1975 St. T. Supp. 99 (D.V.I. Dec. 12, 1975), *quoting* 5 Wright and Miller, Federal Practice and Procedure, § 1297 at 403 (1969).

Here, CIGNA alleges that:

> In an effort to improperly circumvent its commitments under the Release Agreement, Texaco withheld material information respecting "product losses" and made material misrepresentations to the CIGNA affiliated companies . . . that Texaco would not pursue or assist others in pursuing against the CIGNA affiliated companies environmental damage claims at or arising from the Site which had been released and then, knowing such representations were false, engaged in a course of conduct designed to defraud . . . CIGNA affiliated companies by causing them to pay $20,250,000 and therefore seeking additional amounts through Morgan for claims previously released pursuant to the Release Agreement.

Counterclaim of CIGNA International Corporation Against Texaco Inc. and Texaco Caribbean Inc. ("Counterclaim") at Count II, ¶P56.

Pursuant to 12(b)(6), CIGNA's contentions are viewed as true, and therefore this Court must determine whether or not they state a cause of action. Texaco argues that, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, CIGNA's claims in Counts II, III,

and IV of its counterclaim are deficient. Texaco's Motion to Dismiss Counterclaim of CIGNA Against Texaco at 14 - 15. Despite Texaco's contentions, CIGNA alleges that Texaco, in the Release Agreement, withheld information respecting "product losses" and misrepresented its intention not to pursue or assist others in pursuing its claims against CIGNA. Although Texaco accurately contends that the central issue of this litigation concerns an interpretation of the Release Agreement, this Court must take CIGNA's allegations as true for purposes of this Motion. Furthermore, the Complaint cites to numerous dates at which time the alleged fraud occurred. *See e.g.* Counterclaim at ¶¶ 22, 29, and 30. Although no specific place is alleged to be the situs of the fraud, this Court does not believe that absence of a specified situs endangers CIGNA's claim as to fraud, especially since negotiations and discussions occurred over an extended period of time. Accordingly, the first element of the *Hyatt* analysis is satisfied.

Likewise, the other three factors are also satisfied. Count 2 at ¶62 states that "Texaco's actions from prior to the Release Agreement to the present, have been and continue to be designed and intended to cause International and other CIGNA affiliated companies to pay additional amounts for alleged liabilities already paid for and released under the Release Agreement between the parties." Furthermore, CIGNA alleges that it "reasonably relied to their detriment on Texaco's omissions and false representations in agreeing to enter into the Release Agreement and in paying to Texaco $20,250,000 million in settlement of disputed environmental damage claims." *See* Counterclaim, Count II at ¶67. As for damages, CIGNA lists five damages that are a result of the alleged fraud. See Counterclaim, Count II, ¶68.

■ Thus, as to CIGNA's allegation of legal fraud, whether or not such allegations will ultimately be successful, a claim has been established upon which relief can be based.

## C. EQUITABLE FRAUD

Count III of CIGNA's claim alleges equitable fraud on the part of Texaco. Equitable fraud is not a remedy discussed under Virgin Island law. CIGNA argues that "Texaco overlooks that all of the CIGNA Counterclaims are premised upon the Federal Declaratory

290

Judgment Act, 28 U.S.C § 2201." *See Response Memorandum of Law of CIGNA in Opposition to Texaco Inc.'s and Texaco Caribbean Inc.'s Motion to Dismiss Counterclaim of CIGNA* ("CIGNA's Response Memo.") at 21. CIGNA's statement assumes that the remedy of declaratory judgment is one of equity.

Virgin Island law does not attempt to distinguish declaratory judgments as classified as either equity or law. However, the Third Circuit in *Patten Securities Corp., Inc. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987) has discussed the status of declaratory judgments. The court stated that "actions for declaratory judgments are generally considered neither equitable nor legal, for declaratory relief can be given in either type of action." *Patten*, 819 F.2d at 404; *See also* 10B Wright, Miller, and Kane § 2769 (1998). Therefore, a claim based on § 2201 does not automatically create an action in equity.

■ When local laws do not exist to the contrary, "the rules of the common law as expressed in the Restatement of Law are the rules of decision in the courts of the Virgin Islands." *L.E.B. Enterprises, Inv. v. Barclays Bank, P.L.C.* 33 V.I. 42, 45 (Terr. Ct. 1995). CIGNA cites to numerous provisions of the Restatement (Second) of Contracts. However, these provisions do not provide specifically for the remedy of equitable fraud. CIGNA's Response Memo. at 21. In addition, the Restatement provisions to which CIGNA directs this Court's attention all concern the unenforceability of contracts due to fraud. *See* Response Memorandum of Law of CIGNA in Opposition to Texaco Inc.'s and Texaco Caribbean Inc.'s Motion to Dismiss Counterclaim of CIGNA ("CIGNA's Response) at 19-20. In contrast, however, CIGNA's counterclaim, on its face, is not seeking the voidability of the Release Agreement. CIGNA seeks monetary damages in Counts I through Count VII. Counts VIII and IX seek a judgment pursuant to the Release Agreement, thereby essentially requesting an *enforcement* of the agreement. Therefore, to the extent that equitable relief exists under Virgin Island law, CIGNA has not stated a claim upon which relief can be based. Consequently, as to claims of equitable fraud, Texaco's motion is granted.

291

## D. MISREPRESENTATION

Count IV of CIGNA's counterclaim alleges that Texaco misrepresented material facts in order to induce CIGNA to sign the Release Agreement. Neither Virgin Islands law nor the Restatement makes a distinction between a claim of fraud, alleged in Count II, and a claim of misrepresentation, alleged in Count IV. The Restatement does, however, recognize a separate claim of negligent misrepresentation. Restatement (Second) of Torts § 552. *Id.*, § 552 defines the tort of negligent misrepresentation:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transaction, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>>
>> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
>
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Pursuant to § 552, CIGNA must establish: (1) that Texaco supplied false information; (2) that the information was supplied in the course of Texaco's business, or in a transaction in which Texaco had a pecuniary interest; (3) that CIGNA was guided by the information in its business transactions; (4) that CIGNA suffered

pecuniary loss as a result of its justifiable reliance upon the information; and (5) that Texaco failed to exercise reasonable care or competence in obtaining or communicating the information. *See L.E.B. Enterprises v. Barclays Bank*, 33 V.I. 42, 46 (Terr. Court 1995).

■ This claim is similar to that of a fraud claim, except for factor (5), which requires a demonstration of a failure to use reasonable care. CIGNA alleges that "Texaco withheld information and represented to the CIGNA affiliated companies that it was the sole and lawful owner of all of Texaco's environment damage claims at or arising from the Site, and failed to disclose its claims against Morgan for the same liabilities when in fact, Texaco knew such representations were false and misleading." Counterclaim, Count IV at ¶73. Viewed as true, this allegation satisfies the requirement of supplying false information. Furthermore, in a light most favorable to CIGNA, this information was supplied in the course of Texaco's business, CIGNA. relied on these allegedly false statements in entering the Release Agreement, and this ultimately caused CIGNA to suffer damages. See Counterclaim, Count IV at ¶78 and ¶79. CIGNA does not, however, allege that the defendant failed to use reasonable care in utilizing the information. Instead, on its face, the complaint alleges intentional misrepresentation. Therefore, Plaintiff's claim for negligent misrepresentation cannot stand.

## E. BAD FAITH

■ Counts V and VI allege Bad Faith on the part of Texaco. Virgin Islands law recognizes the tort of bad faith. *See Justin v. Guardian Insurance Company Inc.*, 670 F. Supp. 614, 616 n.5 (D.V.I. 1987). In *Justin*, an insured brought an action against an insurer for bad faith in refusing to pay a claim. In the instant action, however, the insurer is bringing a claim of bad faith against the insured's Successor based on a Release Agreement. Nevertheless, the Restatement (Second) of Contracts states that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981). "Bad faith" is distinguished from "good faith" because such conduct constituting bad faith violates "community

293

standards of decency, fairness or reasonableness." Restatement (Second) of Contracts § 205 cmt. a. An illustration of bad faith is:

> A, owner of a shopping center, leases part of it to B, giving B the exclusive right to conduct a supermarket, the rent to be a percentage of B's gross receipts. During the term of the lease A acquired adjoining land, expands the shopping center, and leases part of the adjoining land to C for a competing supermarket. Unless such action was contemplated or is otherwise justified, there is a breach of contract by A.

Restatement (Second) of Contracts § 205. Texaco argues that CIGNA has "alleged no facts demonstrating dishonesty or bad faith on the part of Texaco." Texaco's Motion at 13. Despite this allegation, CIGNA has, in its complaint, satisfied its burden. CIGNA alleges that Texaco has, among other things, acted in bad faith in "commencing, maintaining, initiating and prosecuting and causing to be commenced, maintained, initiated, and prosecuted claims against International and other CIGNA affiliated companies in violation of the terms of release provided under the Release Agreement." Counterclaim, Count V at ¶83 and Count VI at ¶87. Given the factual context, such an allegation, if true, rises to the level of bad faith.

### III. CONCLUSION

For the reasons stated above, Texaco's motion is granted as to Counts III and IV, and denied as to counts II, V, and VI.

Dated: December 15, 1998