**ROBERT ADDIE, JORGE PEREZ and JASON TAYLOR, Plaintiffs**

**v.**

**CHRISTIAN KJAER, HELLE BUNDGAARD, STEEN BUNDGAARD, JOHN KNUD FÜRST, KIM FÜRST, NINA FÜRST, and KEVIN F. D'AMOUR, Defendants**

Civil No. 2004-135

District Court of the Virgin Islands

Division of St. Thomas and St. John

February 23, 2009

GREGORY H. HODGES, ESQ., St. Thomas, USVI, *For the Plaintiffs.*

CAROL G. HURST, ESQ., St. Thomas, USVI, *For Christian Kjaer, Helle Bundgaard, Steen Bundgaard, Fürst Knud John, Fürst Kim, Nina Fürst, Defendants.*

MARIA T. HODGE, St. Thomas, USVI, *For Kevin F. D'Amour, Defendant.*

GÓMEZ, *Chief Judge*

## MEMORANDUM OPINION

(February 23, 2009)

Before the Court is the motion of defendants Christian Kjaer; Helle Bundegaard; Steen Bundegaard; John Knud Fürst; Kim Fürst; and Nina Fürst (together, the "Sellers") to dismiss the negligent misrepresentation claim asserted in Count III of the complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties are well acquainted with the factual and procedural history of this matter. The Court therefore recites only those facts necessary for the disposition of this motion.

The plaintiffs, Robert Addie, Jorge Perez and Jason Taylor (together, the "Buyers"), agreed to purchase two parcels of land from the Sellers: Great St. James Island, St. Thomas, U.S. Virgin Islands and Parcel No. 11 Estate Nazareth, No. 1 Red Hook Quarter, St. Thomas, U.S. Virgin

Islands. The Buyers also agreed to pay $1.5 million into an escrow account managed by Premier Title Company, Inc., formerly known as First American Title Company, Inc. ("Premier").[1] At all times relevant, defendant Kevin D'Amour ("D'Amour") was Premier's president and sole shareholder. D'Amour also acted as counsel to the Sellers.

Neither parcel was conveyed as the parties contemplated. This action ensued.

The Buyers allege the following: breach of contract; negligent misrepresentation by the Sellers; fraud by D'Amour; conversion; and unjust enrichment. The Buyers also seek a declaration that: they are entitled to terminate the land contracts; the Sellers cannot deliver marketable title to the land; and the Sellers have defaulted under the terms of the land contracts.

The Sellers seek dismissal of Count III's negligent misrepresentation claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Buyers have filed an opposition and the Sellers a reply.

## II. DISCUSSION

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (per curiam) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)). All reasonable inferences are drawn in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). A court must ask whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atlantic Corp.*, 127 S. Ct. at 1969 (emphasis in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65 (internal citations omitted). Thus,

---

[1] Premier was initially named as a defendant in this matter. The Buyers thereafter settled their claims with Premier. Premier has been dismissed from this matter.

"[t]o survive a motion to dismiss, a . . . plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).' " *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp.*, 127 S. Ct. at 1965).

## III. ANALYSIS

The Sellers seek dismissal of Count III's negligent misrepresentation claim on two main grounds. First, they assert that the Buyers have failed to allege an essential element of such a claim. Second, they argue that Count III must be dismissed under the gist of the action doctrine.

■ Under Virgin Islands law, to state a claim for negligent misrepresentation, a plaintiff must allege that: (1) the defendant made a representation that was false; (2) the defendant should have known that the representation was false; (3) the plaintiff relied on the representation; (4) the plaintiff suffered pecuniary loss due to its justifiable reliance on the representation; and (5) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information contained in the representation. *See In re Tutu Water Wells Contamination Litig.*, 40 V.I. 279, 32 F. Supp. 2d 800, 807 (D.V.I. 1998) (citing RESTATEMENT (SECOND) OF TORTS § 552 (1977)).

■ Negligent misrepresentation "requires an *express* representation which is false or misleading at the time it is made." *Charleswell v. Chase Manhattan Bank, N.A.*, 45 V.I. 495, 308 F. Supp. 2d 545, 568 (D.V.I. 2004) (quoting *L.E.B. Enters., Inc. v. Barclays Bank, P.L.C.*, 33 V.I. 42, 46 (Terr. Ct. 1995) (emphasis in original)). That is, an "alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000) (stating New York law; citations omitted). This requirement is rooted in the principle that "[i]t is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions." *City of St. Joseph v. Southwestern Bell Tel.*, 439 F.3d 468, 478 (8th Cir. 2006) (stating Missouri law; quotation marks and citation omitted). As one federal court of appeals has explained:

> This is not some obscure technical rule. It is a natural consequence of the meanings of the terms negligent and misrepresentation. A misrep-

resentation conveys "false information[]"; that is, it must be a false statement of fact. But a promise in itself contains no assertion of fact other than the implied representation that the speaker intends to perform the promise. The misrepresentation must therefore be that the promissor is falsely declaring that he has the intent to perform. If the promissor intends not to perform, however, the misrepresentation (that the promissor intends to perform) is not negligent; it is, rather, knowing and intentional[.]

*Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2008) (stating Colorado law; internal citations omitted). Thus, "if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact . . . ." *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) (stating New York law; emphasis, quotation marks and citation omitted).

In Count III, the Buyers allege that: the Sellers falsely represented that title to the two parcels of land was free and clear for the purpose of inducing the Buyers to purchase those parcels; the Sellers knew or should have known that title to those parcels was not free and clear; the Buyers justifiably relied on the Sellers' representations; the Buyers have incurred sundry financial losses due to that reliance; and the Sellers did not exercise reasonable care or competence in obtaining or communicating the information contained in their representations to the Buyers. The Buyers seek to recover $1.5 million in escrow funds.

■ Crucially, missing from Count III is any allegation that the Sellers made a representation of fact that was false at the time it was made. There is also no allegation that the Sellers purposefully intended not to perform the parties' contract. At most, the Buyers have alleged that the Sellers failed to fulfill their future promise to deliver marketable title at closing. Significantly, that allegation is inadequate to sustain a negligent misrepresentation claim.[2] *See Birt v. Wells Fargo Home Mortg., Inc.*,

---

[2] In their opposition, the Buyers point to their allegation that the Sellers misrepresented their "ability" to transfer marketable title. That clarification is unpersuasive to the extent the complaint lacks an allegation that the Sellers promised the Buyers to deliver marketable title *and* intended not to follow through on that promise. *Cf. Kinsey v. Preeson*, 746 P.2d 542, 551 (Colo. 1987) ("A promise concerning a future act, *when coupled with a present intention not to fulfill the promise,* can be a misrepresentation which is actionable as fraud.") (emphasis supplied); *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954,

75 P.3d 640, 658 (2003) (explaining that "the extension of negligent misrepresentation to situations involving future intentions would endow every breach of contract with a potential tort claim for negligent promise") (internal quotation marks omitted); *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 4 P.3d 1149, 1167 (2000) (stating that "the tort of negligent misrepresentation . . . does not, by its terms, apply to misrepresentation of an intention to perform an agreement") (quotation marks and citation omitted).

Even if the Buyers had stated a viable negligent misrepresentation claim, the gist of the action doctrine would bar Count III.

██ "[T]he gist of the action doctrine bars plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002) (applying Pennsylvania law; quotation marks and citation omitted).[3] The doctrine bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contact claim or the success of which is wholly dependent on the terms of a contract.

*eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (2002) (internal citations omitted), *cited with approval in Toledo Mack Sales & Serv. v. Mack Trucks, Inc.*, 530 F.3d 204, 229 (3d Cir. 2008).

The allegations in Count III are set out above. In Count II's breach of contract claim, the Buyers allege that: the Sellers breached the land contracts by failing to deliver marketable title; the Sellers knew or should have known that they could not do so; and the Sellers' failure to do so caused the Buyers financial harm. The Sellers seek recovery of $1.5 million in escrow funds.

---

502 N.E.2d 1003, 1004, 510 N.Y.S.2d 88 (1986) ("[A] promise made with a preconceived and undisclosed intention of not performing it, constitutes a misrepresentation.") (other alterations, quotation marks and citation omitted).

[3] Neither the Supreme Court of the Virgin Islands nor the Superior Court of the Virgin Islands has expressly adopted the gist of the action doctrine. However, this Court has previously predicted that, given its favorable treatment by the United States Court of Appeals for the Third Circuit, Virgin Islands courts would adopt the doctrine. *See Charleswell*, 308 F. Supp. 2d at 566-67.

█ Count III, although labeled as a negligent misrepresentation claim, could be construed as an inducement claim. Breach of contract and inducement-type tort claims are not necessarily duplicative of each other. *See, e.g., Padalino v. Std. Fire Ins. Co.*, 616 F. Supp. 2d 538, 550 (E.D. Pa. Oct. 15, 2008) (citations omitted); *Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 341 (E.D. Pa. 2003) ("The distinction between fraud in the inducement and fraud in the performance claims with regard to the gist of the action doctrine is crucial."). The reason is that inducement torts are "generally collateral to (i.e. not 'interwoven' with) the terms of the contract itself." *eToll*, 811 A.2d at 17 (citation omitted). Such torts "are much more likely to present cases in which a social policy against the fraud, external to the contractual obligations of the parties, exists." *Air Prods. & Chems*, 256 F. Supp. 2d at 341 (citations omitted).

On the other hand, "promises made to induce a party to enter into a contract *that eventually become part of the contract* itself cannot be the basis for a fraud-in-the inducement claim under the gist of the action doctrine." *Freedom Props., L.P. v. Lansdale Warehouse Co.*, Civ. No. 06-5469, 2007 U.S. Dist. LEXIS 57116, at *17 (E.D. Pa. Aug. 3, 2007) (emphasis supplied; citations omitted); *see also Bryan's Quality Plus, LLC v. Shaffer Builders, Inc.*, Civ. No. 07-2311, 2008 U.S. Dist. LEXIS 61713, at *11 (E.D. Pa. Aug. 12, 2008) ("Where the fraudulent misrepresentations ripen into contractual duties, the gist of the action doctrine will apply.") (internal quotation marks and citations omitted); *Owen J. Roberts Sch. Dist. v. HTE, Inc.*, Civ. No. 02-7830, 2003 U.S. Dist. LEXIS 2997, at *10 (E.D. Pa. Feb. 28, 2003) (concluding that a fraud claim is barred "if the fraudulent statement became the basis for a contractual duty").

█ Here, the Buyers allege that they were induced to enter into a contract with the Sellers by the Sellers' pre-contract representation that they could deliver marketable title at closing. Importantly, that representation was later written into the parties' contract and therefore became a contractual duty of the Sellers. Indeed, the Buyers allege as much in their complaint:

Paragraph 6 of the Contracts of Sale provides in pertinent part:

6. TITLE: At closing, Seller shall convey a Clear and Marketable title . . . for the Real Property to the Buyer.

. . . .

The Contracts of Sale provide that the Sellers shall convey Clear and Marketable title to the Island and Nazareth Property.

(Compl. ¶¶ 10, 28.)

 Under these circumstances, the Buyers' negligent misrepresentation claim is barred by the gist of the action doctrine.[4] *See, e.g., Freedom Props.*, 2007 U.S. Dist. LEXIS 57116, at *13-18 (dismissing the defendants' fraudulent inducement and negligent misrepresentation counterclaims where the plaintiff's promise to the defendants was incorporated into the parties' subsequent contract); *Tier1 Innovation, LLC v. Expert Tech. Group, LP*, Civ. No. 06-04622, 2007 U.S. Dist. LEXIS 34135, at *12 (E.D. Pa. May 9, 2007) (dismissing fraud and negligent misrepresentation counterclaims because representations about the plaintiff's ability to perform its contractual duties were "inextricably intertwined" with the plaintiff's failure to perform under the contract); *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 650 (E.D. Pa. 2002) (concluding that the plaintiffs' claim that they were fraudulently induced to enter into employment agreements where the defendant did not develop an incentive compensation plan as promised, was barred because the defendant had agreed in the parties' contract to develop the plan); *Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc.*, Civ. No. 01-1083, 2002 U.S. Dist. LEXIS 1460, at *20 (E.D. Pa. Jan. 31, 2002) (dismissing a fraudulent misrepresentation claim where the duty breached was "created and grounded in the contract itself").[5]

---

[4] Courts are sometimes reluctant to apply the gist of the action doctrine at the Rule 12(b)(6) stage. *See Weber Display & Packaging v. Providence Wash. Ins. Co.*, Civ. No. 02-7792, 2003 U.S. Dist. LEXIS 2187, at *12 (E.D. Pa. Feb. 10, 2003) (noting that "courts have cautioned against" applying the doctrine at the motion to dismiss stage). That reluctance subsides where, as here, it is obvious that a misrepresentation claim is duplicative of a breach of contract claim. *See, e.g., KSM Assocs. v. ACS State Healthcare, LLC*, Civ. No. 05-4118, 2006 U.S. Dist. LEXIS 14261, at *7-12 (E.D. Pa. Mar. 30, 2006); *Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833-34 (E.D. Pa. 2000).

[5] Although not mentioned by either party, the economic loss doctrine also militates in favor of Count III's dismissal. That doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002). "The general rule is that economic losses may not be recovered in tort (negligence) absent physical injury or property damage." *Spivack v. Berks Ridge Corp., Inc.*, 402 Pa. Super. 73, 586 A.2d 402, 405 (Pa. Super. Ct. 1990). The

## IV. CONCLUSION

For the reasons given above, the motion to dismiss Count III of the complaint will be granted. An appropriate order follows.

---

doctrine "is designed to maintain the separate spheres of the law of contract and tort." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995) (alteration, quotation marks and citation omitted).

Here, the Buyers seek only money in Count III. Importantly, they also claim an entitlement to that money by virtue of their contract with the Sellers. Furthermore, the Buyers do not allege any physical injury or property damage in Count III. Under these circumstances, their negligent misrepresentation claim is also barred by the economic loss doctrine. *See, e.g., N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc.*, 386 F. Supp. 2d 648, 665 (M.D.N.C. 2005) (dismissing a negligent misrepresentation claim because it related to the performance of the contract) (applying Florida law); *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 658 (E.D. Pa. 2002) (dismissing a negligent misrepresentation claim because "the economic loss doctrine bars [such] claims"); *Hults v. Allstate Septic Sys.*, Civ. No. 06-0541, 2007 U.S. Dist. LEXIS 56728, at *28 (M.D. Pa. Aug. 3, 2007) ("Because the plaintiffs have alleged only economic losses arising out of its agreement with [the defendant] and have not alleged any physical injury or property damage, the plaintiffs' claim of professional negligence is barred by the economic loss doctrine.").