**CAROLE CHESTNUT Appellant/Defendant**
**v.**
**ELSA GOODMAN, Appellee/Plaintiff**

S. Ct. Civil No. 2011-0082
Supreme Court of the Virgin Islands
August 12, 2013

MARK L. MILLIGAN, ESQ., Mark L. Milligan, P.C., St. Croix, USVI, *Attorney for Appellant.*

ROBERT A. WALDMAN, ESQ., Hamm Law Firm, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

### (August 12, 2013)

CABRET, *Associate Justice*. Carole Chestnut appeals a Superior Court judgment in favor of her aunt, Elsa Goodman. The jury found that Chestnut was liable for negligent misrepresentation when she convinced Goodman to give her an interest in a property on St. Croix in exchange for Chestnut's promise to move to the island and care for Goodman in her advancing age. Chestnut argues that the Superior Court should have granted her motion for summary judgment, as well as her motion for judgment as a matter of law, because Goodman gave her an interest in the property as a gift. For the reasons that follow, while we conclude that summary judgment was correctly denied, we reverse the Superior Court's September 13, 2011 Judgment and remand with instructions to grant Chestnut's motion for judgment as a matter of law on the one claim upon which Goodman prevailed, under a theory of "negligent misrepresentation."

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2008, Elsa Goodman filed a complaint in the Superior Court alleging that upon her death, she had promised to give her property — Plot No. 190 of Estate Mary's Fancy, Queen's Quarter, St. Croix — to

her niece, Carole Chestnut, and in return, Chestnut had agreed to provide care to the elderly Goodman. Goodman further alleged that, relying on Chestnut's promise, she changed the title to create a joint tenancy with rights of survivorship in the St. Croix property. Goodman also alleged that Chestnut "breach[ed] her duty by failing to care for her and look after [Goodman]'s best interest and utilized her relationship with [Goodman] to place herself on the title to the St. Croix Property." (J.A. 13.) Goodman sought reformation of title through three separate claims: fraud, breach of contract, and negligent misrepresentation. In her answer to the complaint, Chestnut denied that she had agreed to care for Goodman, asserted that Goodman conveyed the St. Croix property as an irrevocable gift, and counterclaimed for half of all rent proceeds Goodman had collected from renting out the St. Croix property.

On December 20, 2010, Goodman moved for summary judgment, and on January 31, 2011, Chestnut filed an opposition and cross-motion for summary judgment. On March 11, 2011, the Superior Court denied both parties' motions. Trial took place on April 6 and 7, 2011. Three witnesses testified: Donovan Hamm, Esq., Goodman, and Chestnut. Attorney Hamm testified that he prepared the quitclaim deed transferring the property from Goodman to both Chestnut and Goodman as joint tenants, that Chestnut was not involved in preparing the deed, and that he had not spoken with or met Chestnut before the day of his testimony.

Goodman took the stand next, testifying that even though she was capable of caring for herself in January 2006, she had a series of medical problems, including back problems and high blood pressure. She also testified that she was concerned about her future care as she got older or in the event she became ill. Goodman also testified that she had known Chestnut when Chestnut was a child, but that prior to 2006 the two had not spoken or seen each other for nearly forty years. In June 2006, the two reunited when Chestnut came to visit Goodman on St. Croix for a week. According to Goodman, Chestnut told her during the visit that she and her husband would move to St. Croix to take care of Goodman. Goodman further testified that she added Chestnut's name to her checking account at Chestnut's request, after Chestnut told her that it would make it easier for Chestnut to care for her if she became ill. Goodman testified that Chestnut had also suggested Goodman add her name to the St. Croix property's deed, saying that it would prevent people from "com[ing] and kick[ing] me out of the house" while she was caring for Goodman. (J.A.

102.) Goodman agreed, and executed the quitclaim deed creating the joint tenancy. But Goodman testified that she did not understand that the deed would provide Chestnut with an immediate interest in the property, and instead wanted the property to pass to Chestnut only upon Goodman's death. Goodman also testified that Chestnut never lived on the St. Croix property or provided money for its maintenance or taxes.

Eventually, according to Goodman, she moved to Maryland at Chestnut's request so that Chestnut could take care of her, but eight months later their relationship soured. After a phone call in which Chestnut allegedly called Goodman "old" and "stupid," Goodman requested that Chestnut "remove her name from" the St. Croix property, but Chestnut refused. (J.A. 116.) Finally, Goodman testified that she felt deceived by Chestnut's representations that she would move to St. Croix, that she would care for Goodman, and that she was married when she had actually been divorced since 1995. On cross-examination, Goodman admitted that from 2006 to the time of trial she was not in need of any care. Following Goodman's testimony, Chestnut moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).[1] The Superior Court denied the motion on the negligent misrepresentation and fraud claims, but granted the motion on the breach of contract claim. Goodman then rested her case.

The defense then presented its case, during which Chestnut testified that she and Goodman had been close when Chestnut was a child but had not been in regular contact for forty years prior to the incidents leading up to the lawsuit. Chestnut also testified that she was close to her uncle — Goodman's brother — Lawrence Mitchell, and that in 2004, while Mitchell visited Goodman, Chestnut called Goodman's house several times to talk with Mitchell. During those calls, Chestnut also spoke to Goodman and rekindled their relationship, and over the next two years, she and Goodman spoke several times a day by phone, sometimes for hours at a time. Chestnut said that Goodman invited her to come to St. Croix in 2006 and asked her to bring several forms of identification, including her birth certificate and passport, which Goodman told her she would need if Chestnut "want[ed] this house." (J.A. 193-94.) Chestnut

---

[1] The Federal Rules of Civil Procedure apply in the Superior Court through Rule 7, when they are not in conflict with local law or court rule. *See* SUPER. CT. R. 7; *see generally Corraspe v. People*, 53 V.I. 470, 481-85 (V.I. 2010).

further testified that after arriving on St. Croix in January 2006, Goodman escorted Chestnut around her house and pointed out the things she would prefer Chestnut keep after Goodman passed away and provided Chestnut with the combination to her safe, which contained cash and personal papers. The following day, Goodman added Chestnut to her bank accounts on her own initiative, Chestnut testified. After Chestnut left St. Croix, Goodman called her in March 2006 to tell her that she had added Chestnut's name to the deed to the St. Croix property. Chestnut also testified that she never promised to care for Goodman and that Goodman never requested any help in taking care of herself.

Following Chestnut's testimony, the parties rested. On April 7, 2011, the jury found that although Chestnut was not liable for fraud, she was liable for negligent misrepresentation, and that the St. Croix property should be conveyed to Goodman alone. On April 13, 2011, Chestnut filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) requesting that the Superior Court set aside the jury's verdict. On September 13, 2011, the Superior Court entered two orders: the first denied Chestnut's renewed motion for judgment as a matter of law, and the second entered final judgment for Goodman ordering Chestnut to "convey her right, title and interest in the St. Croix Property" to Goodman. (J.A. 261.)

## II. JURISDICTION

We have jurisdiction over this appeal pursuant to title 4, section 32 of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE. ANN. tit. 4, § 32(a). The September 13, 2011 Judgment was final since it dealt with all of the issues in the suit, closed the case, and left " 'nothing to do but execute the judgment,' " *Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 691 (V.I. 2010) (quoting *V.I. Gov't Hosps. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008)), and Chestnut filed a timely notice of appeal on October 3, 2011. *See* V.I.S.CT.R. 5(a). Accordingly, we have jurisdiction over this appeal.

## III. DISCUSSION

Chestnut argues that the Superior Court erred by refusing to grant her motion for summary judgment on her counterclaim because Goodman

had given Chestnut an irrevocable inter vivos gift. Chestnut also argues that the court erred by denying her renewed motion for judgment as a matter of law because even if Goodman's witnesses were accepted as credible, their testimony, as a matter of law, did not support any of the elements of negligent misrepresentation. We address each argument in turn.

## A. Chestnut's Motion for Summary Judgment

Chestnut first argues that the Superior Court erred by refusing to grant her motion for summary judgment on her counterclaim. Chestnut alleged in the counterclaim that in creating the joint tenancy, Goodman gave Chestnut an irrevocable inter vivos gift, and that Chestnut was entitled to a portion of the rent Goodman received from leasing the St. Croix property. The Superior Court denied Chestnut's motion for summary judgment because it found that there was a genuine issue of material fact as to whether — when Goodman signed the deed — she did it with the necessary donative intent.

We exercise plenary review over the trial court's decision to grant or deny summary judgment. *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 418 (V.I. 2009). Because summary judgment is a "drastic remedy," it is only appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (applying standards currently set forth in FED. R. CIV. P. 56(a) and (c)). In conducting this review, we apply the same standard the Superior Court should have used, viewing all inferences from the underlying facts in the light most favorable to the nonmoving party, and taking the nonmoving party's conflicting allegations as true if properly supported. *Id.* To determine whether the Superior Court's decision was appropriate, we must analyze it in the context of the substantive law that governed the cause of action. *Sealey-Christian*, 52 V.I. at 419-20.

For an inter vivos gift of real estate to be effective, "the donee must show (1) a donative intent on the part of the grantor at the time the deed was executed, and (2) an actual or constructive delivery of the deed to the grantee." *United States v. Capobianco*, 836 F.2d 808, 810 (3d Cir. 1988). To establish donative intent, the donee must show that there was a "clear,

473

unmistakable, and unequivocal intention on the part of a donor to make a gift of his or her property in order to constitute a valid, effective gift inter vivos." 38 AM. JUR. 2D *Gifts* § 15 (footnote omitted). Additionally, the "donor must have a present donative intent; a mere intention to give in the future will not suffice." *Id.* (footnotes omitted); *see also* 38 AM. JUR. 2D *Gifts* § 16 ("The intention of the donor may be expressed in words, actions, or a combination thereof and may be inferred from the surrounding facts and circumstances . . . . The presence or absence of donative intent, an essential element of an inter vivos gift, is ultimately an issue to be determined by the trier of fact." (footnotes omitted)).

■■ Here, the Superior Court correctly determined that there were genuine issues of material fact concerning the element of donative intent for the jury to determine. Goodman claimed that she signed the deed following Chestnut's promise that she and her husband would move in and care for Goodman, and denied that it was intended as a gift. Chestnut, on the other hand, argued that Goodman's action in seeking legal counsel to prepare and execute the deed without being asked proved that Goodman had the necessary donative intent. Nevertheless, in deciding whether to grant summary judgment, the Superior Court was forbidden from making this kind of credibility determination and instead had to accept Goodman's allegations as true. Since it is the unique role of the factfinder to make the necessary credibility determinations, the Superior Court correctly denied summary judgment and set the case for trial. *See Williams*, 50 V.I. at 197 ("It is a basic principle . . . that trial judges should not weigh the evidence, make credibility determinations, or draw 'legitimate inferences' from the facts when ruling upon summary judgment motions because these are the functions of the jury."). Accordingly, we affirm the Superior Court's denial of Chestnut's summary judgment motion.

## B. Chestnut's Renewed Motion for Judgment as a Matter of Law

In her second argument, Chestnut asserts that the trial court erred by denying her renewed motion for judgment as a matter of law. In denying Chestnut's renewed motion, the Superior Court held that the record contained sufficient evidence to support the jury's finding, and that Chestnut's arguments for judgment as a matter of law would require the court to reweigh the credibility of the witnesses, which it refused to do. Chestnut disputes the Superior Court's ruling that the case turned on the

credibility of the witnesses, contending that even if Goodman's witnesses were accepted as credible, their testimony, as a matter of law, did not provide enough evidence to sustain the verdict. In reviewing the Superior Court,

> we exercise plenary review of an order granting or denying a motion [for judgment as a matter of law]. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). When reviewing such motions, we apply the same standard as the Superior Court should have utilized. *Id.* "Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability." *Id.* A [motion for judgment as a matter of law] should be granted only when "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Id.* "In performing this narrow inquiry, [trial courts and appellate courts] must refrain from weighing the evidence, determining the credibility of witnesses, or substituting [their] own version of the facts for that of the jury." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

*Corriette v. Morales*, 50 V.I. 202, 205 (V.I. 2008).

██ To support her claim of negligent misrepresentation, Goodman was required to introduce sufficient evidence for a reasonable trier of fact to find (1) that Chestnut supplied false information; (2) that the information was supplied in the course of Chestnut's business, or in a transaction in which Chestnut had a pecuniary interest; (3) that Goodman was guided by the information in her business transactions; (4) that Goodman suffered pecuniary loss as a result of her justifiable reliance upon the information; and (5) that Chestnut failed to exercise reasonable care or competence in obtaining or communicating the information. *In re Tutu Water Wells Contamination Litig.*, 32 F. Supp. 2d 800, 807, 40 V.I. 279 (D.V.I. 1998) (citing RESTATEMENT (SECOND) OF TORTS § 552); *see also Addie v. Kjaer*, 51 V.I. 507, 511 (D.V.I. 2009).

 Chestnut argues that the alleged promise she made to Goodman was only an expression of an interest in moving to St. Croix in the future, and that there was no proof of a material representation of fact that was false when made. "Negligent misrepresentation 'requires an *express*

representation which is false or misleading at the time it is made.' " *Addie*, 51 V.I. at 511 (emphasis in original) (quoting *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 568, 45 V.I. 495 (D.V.I. 2004)). "That is, an 'alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition.' " *Id.* (quoting *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20-21 (3d Cir. 2000)). Courts have recognized that "[t]his requirement is rooted in the principle that '[i]t is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions.' " *Id.* (second alteration in original) (quoting *City of St. Joseph v. Southwestern Bell Tel.*, 439 F.3d 468, 478 (8th Cir. 2006)).

> This is not some obscure technical rule. It is a natural consequence of the meanings of the terms negligent and misrepresentation. A misrepresentation conveys "false information[]"; that is, it must be a false statement of fact. But a promise in itself contains no assertion of fact other than the implied representation that the speaker intends to perform the promise. The misrepresentation must therefore be that the promissor is falsely declaring that he has the intent to perform. If the promissor intends not to perform, however, the misrepresentation (that the promissor intends to perform) is not negligent; it is, rather, knowing and intentional[.]

*Id.* at 511-12 (alterations in original) (quoting *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107 (10th Cir. 2008)).

In this case, Goodman testified that Chestnut had promised to move to St. Croix and care for Goodman in her aging years. But both representations were promises based on Chestnut's then-present intent to perform a future action. Chestnut could not negligently misrepresent her present intent to perform an action in the future — she either made the promise intending to follow through with it, or she made the promise *knowing then* that she did not intend to follow through with it. Chestnut either told the truth, and changed her mind later, or lied, but she could not have negligently misrepresented her present intent to follow through on a promise, as "[t]he tort [of negligent misrepresentation] only applies to cases of misrepresentation of factual, commercial information, not to statements of future intent." *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 4 P.3d 1149, 1167 (2000); *see also Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, 75 P.3d 640, 658 (2003) ("Indeed, the extension of

negligent misrepresentation to situations involving future intentions would endow every breach of contract with a potential tort claim for negligent promise." (internal quotation marks omitted)). Consequently, because this alleged misrepresentation was promissory, "relating to future events that might never come to fruition," *Addie*, 51 V.I. at 511, it could not form the basis of negligent misrepresentation.

█ Furthermore, according to Goodman's testimony, the only misrepresentation of fact Chestnut made was that she was married in 2006, when she actually was divorced.[2] Although this statement meets the first element of negligent misrepresentation — an express statement that was false or misleading at the time it was made — negligent misrepresentation must involve "false information for the guidance of others in their *business* transactions." *Pickering v. Pickering*, 434 N.W.2d 758, 762 (S.D. 1989) (emphasis in original) (citing RESTATEMENT (SECOND) OF TORTS § 552); *see also G.A.W., III v. D.M.W.*, 596 N.W.2d 284, 290 (Minn. Ct. App. 1999) (dismissing claim for negligent misrepresentation because "such a claim has only been recognized in the context of a business or commercial transaction").

█ "One of the most significant restrictions on liability for negligent misrepresentation is that it is limited to persons 'who, in the course of [their] business, profession or employment, or in any other transaction in which [they have] a pecuniary interest, [supply] false information for the guidance of others in their business transactions.' " *Hodge v. Craig*, 382 S.W.3d 325, 344 (Tenn. 2012) (alterations in original) (quoting RESTATEMENT (SECOND) OF TORTS § 552(1)). "[A] 'business transaction' in the context of negligent misrepresentation means exactly what common understanding of the term implies: to state a claim of negligent misrepresentation, the misrepresentation must be given for the plaintiff's

---

[2] At trial, Goodman testified on redirect examination:

> Q: Ms. Goodman, is it correct that you have testified that Ms. Chestnut led you to believe that she was married when she visited you in January of 2006?
> A: Yes.
> . . . .
> Q: If you had known that she was not telling you the truth, would you have, with that knowledge, added her name to your property?
> A: No, because she wasn't telling the truth.

(J.A. 140.)

business or commercial purposes." *Allen v. Steele*, 252 P.3d 476, 484 (Colo. 2011).

■ There is nothing to indicate that Chestnut's representation that she was married was made in a "business context." *Sampson v. MacDougall*, 60 Mass. App. Ct. 394, 802 N.E.2d 602, 608 (2004) (rejecting claim of negligent misrepresentation regarding statement made in a social event); *see also Kentucky Farm Bureau Mut. Ins. Co. v. Blevins*, 268 S.W.3d 368, 373 (Ky. Ct. App. 2008) ("private sale of residential property from one set of homeowners to another" not a business transaction within meaning of Restatement section 552). There was no evidence at trial indicating that Chestnut made any misrepresentation "in a business or commercial setting" — i.e., an interaction "carried on for profit." BLACK'S LAW DICTIONARY 226 (9th ed. 2009) (defining "business"). Instead, the record indicates that the setting was a social call between family members. *See Hodge*, 382 S.W.2d at 345-46 (holding that negligent misrepresentation claims are limited to "statements made in a business or commercial setting," as distinguished from communications between a married couple) (collecting cases). Accordingly, because Chestnut's promise to care for Goodman in the future cannot give rise to a claim of negligent misrepresentation — nor can Chestnut's statements regarding her marital status — the Superior Court erred in denying Chestnut's renewed motion for judgment as matter of law.[3]

## IV. CONCLUSION

The Superior Court correctly denied Chestnut's motion for summary judgment on her counterclaim. However, Goodman failed to provide evidence that she relied on a negligent misrepresentation of fact in her decision to give Chestnut an interest in the St. Croix property. Instead, Goodman relied on promises of future intent and statements that were not made in a business context, which cannot form the basis of an action for negligent misrepresentation. Accordingly, the Superior Court erred when it failed to grant Chestnut's motion for judgment as a matter of law. We

---

[3] Because we reverse on these grounds, we do not reach the arguments raised regarding the other elements of negligent misrepresentation. Additionally, because we hold that the Superior Court erred in denying Chestnut's motion for judgment as a matter of law, we do not reach Chestnut's arguments concerning the affirmative defenses of the gist of the action doctrine or the statute of limitations.

therefore reverse the Superior Court's September 13, 2011 Judgment and remand this case to the Superior Court with the direction to grant Chestnut's motion for judgment as a matter of law.